No. 26-30203

# In the United States Court of Appeals for the Fifth Circuit

STATE OF LOUISIANA, BY AND THROUGH ITS ATTORNEY GENERAL, LIZ
MURRILL ; ROSALIE MARKEZICH,

*Plaintiffs-Appellants*

v.

FOOD & DRUG ADMINISTRATION ; MARTY MAKARY, COMMISSIONER, U.S.
FOOD AND DRUG ADMINISTRATION ; RICHARD PAZDUR, IN HIS OFFICIAL
CAPACITY AS DIRECTOR, CENTER FOR DRUG EVALUATION & RESEARCH, U.S.
FOOD & DRUG ADMINISTRATION ; UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES ; ROBERT F. KENNEDY, JR., SECRETARY, U.S.
DEPARTMENT OF HEALTH AND HUMAN SERVICES,

*Defendants-Appellees*

v.

DANCO LABORATORIES, L.L.C. ; GENBIOPRO, INCORPORATED,

*Intervenors-Appellees*

———————————————

On Appeal from the United States District Court
for the Western District of Louisiana
No. 6:25-cv-01491-DCJ-DJA, Hon. David C. Joseph

———————————————

## MOTION FOR § 705 STAY OR INJUNCTION PENDING APPEAL

———————————————

*(Counsel listed on inside cover)*

Erin M. Hawley
Erik C. Baptist
Julie Marie Blake
ALLIANCE DEFENDING
FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
ehawley@ADFlegal.org

*Counsel for Louisiana and
Rosalie Markezich*

Liz Murrill
  Attorney General
J. Benjamin Aguiñaga
  Solicitor General
Caitlin Huettemann
  Assistant Solicitor General
OFFICE OF THE LOUISIANA
ATTORNEY GENERAL
1885 N. Third Street
Baton Rouge, LA 70802
Telephone: (225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Louisiana*

## CERTIFICATE OF INTERESTED PERSONS

*Louisiana, et al. v. Food and Drug*
*Administration, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

### Plaintiffs-Appellants:

The State of Louisiana

Rosalie Markezich

### Defendants-Appellees:

U.S. Food and Drug Administration

U.S. Department of Health and Human Services

Martin A. Makary, M.D., in his official capacity as Commissioner of Food and Drugs, U.S. Food and Drug Administration

Tracy Beth Høeg, M.D., Ph.D., in her official capacity as Acting Director, Center for Drug Evaluation and Research, U.S. Food and Drug Administration

Robert F. Kennedy, Jr., in his official capacity as Secretary, U.S. Department of Health and Human Services

**<u>Intervenors-Appellees:</u>**

Danco Laboratories, LLC (Danco represents that it does not have a parent company and there is no publicly held corporation that owns 10% or more of Danco's stock.)

GenBioPro, Inc. (GenBioPro represents that its parent company is Xenia Holdco LLC, and there is no publicly held corporation that owns 10% or more of GenBioPro's stock.)

**<u>Third Party Manufacturer:</u>**

Evita Solutions LLC

**<u>Party Counsel:</u>**

For Plaintiff-Appellant Louisiana:

Liz Murrill
J. Benjamin Aguiñaga
Caitlin Huettemann
Office of the Louisiana Attorney General
1885 N. Third Street
Baton Rouge, LA 70804

For Plaintiffs-Appellants Louisiana and Rosalie Markezich:

Erin Morrow Hawley
Erik C. Baptist
Julie Marie Blake
Frank W. Basgall
Gabriella M. McIntyre
Dalton A. Nichols
Alliance Defending Freedom
44180 Riverside Pkwy
Lansdowne, VA 20176

For Plaintiff-Appellant Rosalie Markezich:

Michael T. Johnson
Johnson, Siebeneicher & Ingram
2757 Highway 28 East
Pineville, Louisiana 71360

For Defendants-Appellees:

Brett A. Shumate
James W. Harlow
Noah Katzen
U.S. Department of Justice
1100 L St., NW
Washington, DC 20005

For Intervenor-Appellee Danco Laboratories:

William Most
Most & Associates
201 St. Charles Ave., Ste. 2500 #968
New Orleans, Louisiana 70170

Jessica Lynn Ellsworth
Alexander V. Sverdlov
Danielle Desaulniers Stempel
Dana Raphael
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004

For Intervenor-Appellee GenBioPro:

Skye L. Perryman
Carrie Y. Flaxman
Lisa Newman
Democracy Forward Foundation
P.O. Box 34553

Washington, DC 20043

Robert J. Katerberg
Daphne O'Connor
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743

John Adcock
Adcock Law
8131 Oak Street, Ste. 100
New Orleans, LA 70118

**Amici and Counsel:**

100 Reproductive Health Rights & Justice Organizations

Jessica Ring Amunson
Jenner & Block (DC)
1099 New York Ave. NW, Ste. 900
Washington, DC 20001

Jamila Asha Johnson
Lawyering Project
900 Camp St. 3rd Floor, Ste. 1197
New Orleans, LA 70130

60 Plus Association

Alabama Policy Institute

Alaska Family Council

American Association of Senior Citizens

American Values

Americans United for Life

iv

Americas Women

Association of Mature American Citizens Actions

Centennial Institute at Colorado Christian University

Center for Urban Renewal & Education

Christian Law Association

Christian Medical & Dental Associations

Democrats for Life

Eagle Forum

Family Council in Arkansas

Family Foundation of Virginia

Family Institute of Connecticut Action

Fran Bevan

Frontline Policy Council

Human Coalition

International Conference of Evangelical Chaplain Endorsers

Tim Jones
Former Speaker, Missouri House, Founder, Leadership for America Institute

Alveda King

Louisiana Family Forum

Case: 26-30203    Document: 12-1    Page: 8    Date Filed: 04/17/2026

Lutheran Center for Religious Liberty

Maryland Family Institute

Men & Women for a Representative Democracy in America, Inc.

Men for Life

Calum Miller

National Religious Broadcasters

National Right to Life

New York State Conservative Party

North Carolina Values Coalition

Melissa Ortiz
Principal & Founder, Capability Consulting

Phyllis Schlafly's Pennsylvania Eagle Forum

Priests for Life

Rick Santorum

Gregory P. Seltz
Executive Director, LCRL, Speaker Emeritus, The Lutheran Hour

Paul Stam
Former Speaker Pro Tem, N C House of Representatives

Kathy Szeliga
Delegate District 7 A, Vice Chair of the Maryland Freedom Caucus

Suzi Voyles

vi

President, Eagle Forum of Georgia

Wagner Center

Wisconsin Family Action, Inc.

Women for Democracy in America, Inc.

Young America's Foundation

     Ben E. Clayton
     Clayton Law Firm (Slidell)
     893 Brownswitch Rd., Ste. 101
     Slidell, LA 70458

Advancing American Freedom, Inc.

     Ben E. Clayton
     Clayton Law Firm (Slidell)
     893 Brownswitch Rd. Ste. 101
     Slidell, LA 70458

     John Marc Wheat
     Advancing American Freedom
     801 Pennsylvania Ave. NW, Ste. 930
     Washington, DC 20004

American Association of Pro-life Obstetricians & Gynecologists

Family Research Council

Samaritan's Purse

Martha Shuping

     Brian Wade Arabie
     Sigler Arabie & Cannon
     P.O. Box 1550

Lake Charles, LA 70602

Christopher E. Mills
Spero Law
557 E. Bay St., Ste. 22251
Charleston, SC 29413

American Center for Law and Justice

Olivia F. Summers
American Center for Law & Justice
201 Maryland Ave. NE
Washington, DC 20002

Kevin S. Vogeltanz
Law Office of Kevin S Vogeltanz
428 W. 21st Ave.
Covington, LA 70433

American College of Obstetricians and Gynecologists

Meaghan Hannan Davant
Molly A. Meegan
American College of Obstetricians & Gynecologists
409 12th St. SW
Washington, DC 20024

Malcolm Clark Lloyd
ACLU of Louisiana
1340 Poydras St., Ste 2160
New Orleans, LA 70112

Nicole Amanda Marton
Debevoise & Plimpton (DC)
801 Pennsylvania Ave. NW, Ste. 500
Washington, DC 20004

Kathryn Campbell Saba

Shannon Rose Selden
Debevoise & Plimpton (NY)
66 Hudson Blvd.
New York, NY 10001

States of Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington

Ester Murdukhayeva
Attorney General of NY (NYC)
28 Liberty St.
New York, NY 10005

Jacob Kennedy Weixler
Weixler Law
3640 Magazine St.
New Orleans, LA 70115

States of Nebraska, Alabama, Alaska, Arkansas, Georgia, Idaho, Indiana, Iowa, Kansas, Mississippi, Missouri, Montana, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, West Virginia, and Wyoming

Cody S. Barnett
Attorney General of NE
1445 K St., Rm. 2115
Lincoln, NE 68508

Rachel Thyre Vogeltanz
Law Office of Rachel Vogeltanz
428 W. 21st Ave.
Covington, LA 70433

Robert M. Califf, Michael A. Friedman, Margaret Hamburg, Jane E. Henney, David A. Kessler, Stephen Ostroff, Joshua M. Sharfstein, Norman E. Sharpless, and Janet A. Woodcock.

Salvador I. Bivalacqua
Mandie E. Landry
Bivalacqua Gele Ellis
650 Poydras St., Ste. 2200
New Orleans, LA 70130

Margaret M. Dotzel
Alyssa Howard
William B. Schultz
Zuckerman Spaeder (DC)
2100 L St. NW, Ste. 400
Washington, DC 20037

Center Against Forced Abortions

Justice Foundation

National Association of Christian Lawmakers

Women Injured by Abortion

Mary Jane Browning
Allan E. Parker, Jr.
R Clayton Trotter
Justice Foundation
8023 Vantage Dr., Ste. 1275
San Antonio, TX 78230

Hunter W. Lundy
Lundy Law
P.O. Box 3010
Lake Charles, LA 70602

Troy Houston Middleton, IV
Lundy Law (LC)
501 Broad St.
Lake Charles, LA 70601

x

Concerned Women for America

    Ben E. Clayton
    Clayton Law Firm (Slidell)
    893 Brownswitch Rd., Ste. 101
    Slidell, LA 70458

    Mario Alberto Diaz
    Concerned Women for America
    1000 N. Payne St.
    Alexandria, VA 22314

60 Members of Congress

    Heather Gebelin Hacker
    Hacker Stephens
    108 Wild Basin Rd. S, Ste. 250
    Austin, TX 78746

    Joseph Scott St. John
    St. John LLC
    1701 Jefferson Ave., 7th Fl.
    New Orleans, LA 70115

Disability Rights Education & Defense Fund

    Kristen Diane Amond
    Amond Law
    3640 Magazine St.
    New Orleans, LA 70115

    Chloe Marie Chetta
    Barrasso Usdin et al. (NO)
    909 Poydras St., Ste. 2350
    New Orleans, LA 70112

    Elizabeth Renee June
    Allen Overy et al (DC)

1101 New York Ave. NW
Washington, DC 20005

Katherine Mallory Tosch Hoggatt
Allen Overy et al.
800 Capitol St., Ste. 2200
Houston, TX 77002

Maria Michelle Uzeta
Disability Rights Education & Defense Fund
3075 Adeline St., Ste. 210
Berkeley, CA 94703

Ethics and Public Policy Center

Michelle Ward Ghetti
Ghetti Law
139-B James Comeaux Rd., Ste. 802
Lafayette, LA 70508

Martin Edward Whelan, III
Ethics & Public Policy Center
1730 M St. NW, Ste. 910
Washington, DC 20036

Carol Everett, Tammi Morris, Monty Patterson, and Leslie Wolbert

Brian Wade Arabie
Sigler Arabie & Cannon
P.O. Box 1550
Lake Charles, LA 70602

Former U.S. Department of Justice Officials

Arielle Kay Herzberg
Wilmer Cutler et al. (CO)
1225 17th St Ste 2600
Denver, CO 80202

Maitland Lilja Io Jones
Wilmer Cutler et al. (10007)
250 Greenwich St.
New York, NY 10007

Kimberly Ari Parker
Wilmer Cutler et al.
2100 Pennsylvania Ave. NW
Washington, DC 20037

Richard Gerard Perque
Law Office of Richard G Perque
700 Camp St.
New Orleans, LA 70130

Alan Evan Schoenfeld
Wilmer Cutler et al. (10007)
250 Greenwich St.
New York, NY 10007

Kyle Edwards Haugh
CA Dept of Justice
455 Golden Gate Ave., Ste. 11000
San Francisco, CA 94102

Heartbeat International, Inc.

Brennan Tyler Brooks
Thomas More Society
309 W. Washington St., Ste. 1250
Chicago, IL 60606

Charles Kenneth Cicero, III
Cicero Law
205 Holiday Blvd., Ste. 100
Covington, LA 70433

Danielle Merry White
Heartbeat International, Inc.
8405 Pulsar Pl., Ste. 100
Columbus, OH 43240

I G H

Sapna Khatri
Boston University School of Law
765 Commonwealth Ave., 9th Fl.
Boston, MA 02215

Meghan K. Matt
Murrell Law Firm
4005 St Claude Ave.
New Orleans, LA 70117

Legal Voice

Robin Michelle Turner
Legal Voice
P.O. Box 582
Missoula, MT 59806

Rebekka C. Veith
Miller Thibodeaux et al.
643 Magazine St., Ste. 405
New Orleans, LA 70130

Medical Students for Choice

Kathryn Coniglio Arnett
Charlotte Vida Baigent
Jayme Alyse Jonat
Katharine Gene Zeigler
Holwell Shuster & Goldberg
425 Lexington Ave.
New York, NY 10017

Alexandra DiBiase Moody
Lift Louisiana
2831 St. Claude Ave. #203
New Orleans, LA 70117

National Domestic Violence Hotline

Robin Michelle Turner
Legal Voice
P.O. Box 582
Missoula, MT 59806

Rebekka C. Veith
Miller Thibodeaux et al.
643 Magazine St., Ste. 405
New Orleans, LA 70130

Students For Life of America

L. Katie Buckner
Students for Life of America
1000 Winchester St., Ste. 301
Fredericksburg, VA 22401

R. Bradley Lewis
Law Office of R. Bradley Lewis
248 Richmond St.
Bogalusa, LA 70427

Trinity Legal Center

Brian Wade Arabie
Sigler Arabie & Cannon
P.O. Box 1550
Lake Charles, LA 70602

Linda Boston Schlueter

xv

Trinity Legal Center
1150 N. Loop 1604 W, Ste. 108-208
San Antonio, TX 78248

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.............................................i

TABLE OF AUTHORITIES.................................................................xviii

MOTION ...........................................................................................1

STATEMENT.......................................................................................2

JURISDICTIONAL STATEMENT...........................................................7

STANDARD OF REVIEW.....................................................................8

ARGUMENT.......................................................................................8

I.   AS THIS COURT AND THE DISTRICT COURT HAVE CONCLUDED,
     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. .........................9

     A.   The 2023 REMS Is Unlawful. .....................................................9

     B.   Louisiana Has Standing..........................................................12

II.  AS THE DISTRICT COURT CONCLUDED, LOUISIANA IS SUFFERING
     IRREPARABLE HARM. .............................................................17

III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY OR
     INJUNCTION.................................................................18

     A.   The Remaining Factors Are Straightforward. ........................18

     B.   The District Court's Considerations Are Misplaced. ...............20

CONCLUSION ..................................................................................26

CERTIFICATE OF SERVICE.................................................................28

CERTIFICATE OF COMPLIANCE ........................................................29

# TABLE OF AUTHORITIES

**Cases**

*All. for Hippocratic Med. v. FDA,*
2023 WL 2913725 (5th Cir. Apr. 12, 2023) ...........................................passim

*All. for Hippocratic Med. v. FDA,*
78 F.4th 210 (5th Cir. 2023) ...........................................................passim

*Bost v. Ill. State Bd. of Elections,*
146 S. Ct. 513 (2026) ........................................................................16

*Buenrosto-Mendez v. Bondi,*
166 F.4th 494 (5th Cir. 2026) ..........................................................22

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
98 F.4th 220 (5th Cir. 2024) ............................................................23

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398, 414 n.5 (2013) ...........................................................13

*Diamond Alt. Energy, LLC v. EPA,*
606 U.S. 100 (2025) ..........................................................................16

*Dobbs v. Jackson Women's Health Organization,*
597 U.S. 215 (2022) ............................................................................2

*FDA v. All. for Hippocratic Med.,*
602 U.S. 367 (2024) .......................................................................4, 21

*In re Flint Water Cases,*
960 F.3d 820 (6th Cir. 2020) .............................................................1

*Larson v. Valente,*
456 U.S. 228 (1982) ..........................................................................16

*Moore v. Tangipahoa Par. Sch. Bd.,*
507 F. App'x 389 (5th Cir. 2013) ................................................5, 8, 18

*Nken v. Holder,*
556 U.S. 418 (2009) ............................................................................9

*Simon v. City & Cnty. of San Francisco,*
135 F.4th 784 (9th Cir. 2025) .............................................................1

*Speech First, Inc. v. Killeen,*
  968 F.3d 628 (7th Cir. 2020) ....................................................................18

*Texas v. United States,*
  126 F.4th 392 (5th Cir. 2025) ...............................................................12, 13

*Texas v. United States,*
  50 F.4th 498 (5th Cir. 2022) .....................................................................17

*Texas v. United States,*
  809 F.3d 134 (5th Cir. 2015) ....................................................................12

*TitleMax of Tex., Inc. v. City of Dallas,*
  142 F.4th 322 (5th Cir. 2025) .................................................................8, 18

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ...............................................................................23, 24

*United States v. Abbott,*
  110 F.4th 700 (5th Cir. 2024) ..............................................................5, 8, 18

*Vapor Tech. Ass'n v. Graham,*
  167 F.4th 302 (5th Cir. 2026) .....................................................................8

*Wages & White Lion Invs., LLC v. FDA,*
  16 F.4th 1130 (5th Cir. 2021) ................................................................8, 10

## Statutes

28 U.S.C. § 1292(a)(1) ......................................................................................7

5 U.S.C. § 705 ...................................................................................... passim

La. R.S. 40:1061.1(A)(1) .................................................................................13

## Other Authorities

*Questions and Answers on Mifepristone for Medical Termination of
  Pregnancy Through Ten Weeks Gestation*, U.S. Food & Drug Admin.,
  perma.cc/4TMY-SWYQ .............................................................................6

## Rules

Fed. R. App. P. 8(a)(1) ....................................................................................1

## MOTION

Under Federal Rules of Appellate Procedure 8 and 27, Plaintiffs-Appellants the State of Louisiana and Rosalie Markezich move the Court for a stay under 5 U.S.C. § 705 pending appeal or, alternatively, an injunction pending appeal. The subject of the stay or injunction is the U.S. Food and Drug Administration's (FDA) "2023 agency action removing the in-person dispensing requirement for the abortion drug, mifepristone," also known as the "2023 REMS." Ex. A (Dist.Ct.Op.) at 1.[1]

Although a movant "ordinarily" must first seek relief pending appeal in the district court, Fed. R. App. P. 8(a)(1), that is not the case where such a formal request would be futile, *see, e.g.*, *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 815 n.22 (9th Cir. 2025); *In re Flint Water Cases*, 960 F.3d 820, 825 (6th Cir. 2020). That is the situation here, as the district court has both (a) denied the precise preliminary relief Plaintiffs now seek from this Court and (b) stayed the lawsuit, preventing any further proceedings below.

---

[1] The Intervenors oppose this relief and intend to respond; the Federal Defendants intend to respond.

## STATEMENT

For decades, FDA closely regulated the abortion drug mifepristone. One such regulation was an in-person dispensing requirement, which, among other things, ensured that a woman was operating free from coercion and that mifepristone would not pose a unique danger to her health.

In 2023, however, the Biden Administration changed mifepristone's Risk Evaluation and Mitigation Strategy (REMS) to remove the in-person dispensing requirement. The Biden Administration's avowed purpose was to undermine *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 232 (2022). Fearing that pro-life states would provide strong protections for unborn babies and their mothers after *Dobbs*, the Biden Administration sought to ensure that prescribers outside those states (say, in New York and California) could still effectuate abortions in pro-life states. The key to that scheme was the 2023 REMS: the permanent removal of the in-person dispensing requirement, which allowed the "dispensing [of] mifepristone through the mail ... or through mail-order pharmacy" into pro-life states. Dist.Ct.Op.6 (citation omitted). The net result is that some 1,000 Louisiana babies are

2

illegally aborted using FDA-approved mifepristone every month. Dist.Ct.Op.24.

In this case, Louisiana and one of its citizens—Rosalie Markezich, who was coerced to take mifepristone to abort a baby she wanted—have sued for vacatur of the 2023 REMS under the Administrative Procedure Act (APA).[2] *See* Dist.Ct.ECF.1 (complaint). Louisiana has sought a stay of the 2023 REMS under 5 U.S.C. § 705 or a preliminary injunction against its enforcement. *See* Dist.Ct.ECF.20-26 (preliminary-relief motion); Dist.Ct.ECF.111 (preliminary-relief reply). FDA has refused to defend the 2023 REMS. Ex. B (Tr.) at 35 ("We're not taking a position on any merits issue with respect to this motion."). In fact, FDA's position is that the 2023 REMS reflects a "lack of adequate consideration," Dist.Ct.Op.28 (citation omitted), and that the "Biden [A]dministration removed mifepristone's in-person dispensing rule without studying the safety risks," Dist.Ct.ECF.1 at 4 (citation omitted).

There is virtually no question that the 2023 REMS is unlawful under basic APA review. Two panels of this Court already have said as

---

[2] Because the district court focused its analysis on Louisiana, *see* Dist.Ct.Op.25 n.15, 26 n.16, this motion likewise focuses on Louisiana.

much, criticizing FDA's "ostrich's-head-in-the-sand approach" and twice upholding a § 705 stay of the 2023 REMS. *All. for Hippocratic Med. v. FDA* (*Alliance I*), 2023 WL 2913725, at *17 (5th Cir. Apr. 12, 2023); *All. for Hippocratic Med. v. FDA* (*Alliance II*), 78 F.4th 210, 249–51 (5th Cir. 2023).[3] (The Supreme Court later reversed that stay solely on standing grounds. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024).) The district court below similarly agreed that "Plaintiffs are likely to succeed on the merits of their 2023 REMS challenge." Dist.Ct.Op.28.

There is also virtually no question that Louisiana has standing to sue and is suffering irreparable harm. Here, too, the district court below agreed that, "[b]y permitting medical providers to prescribe mifepristone remotely, the 2023 REMS facilitates the distribution of mifepristone into Louisiana," causing illegal abortions in Louisiana. *Id.* "Louisiana suffers sovereign harm each time [its] laws are circumvented," the court explained, and "[n]o remedy at law can redress that sovereign harm." *Id.*

---

[3] As the district court explained, the *Alliance II* Court technically considered a 2021 Nonenforcement Decision, not the 2023 REMS; however, "the *Alliance II* court described the 2023 REMS as merely a 'final form of a previous, identical policy,' removing mifepristone's in-person dispensing requirement"—*i.e.*, the 2021 Nonenforcement Decision. Dist.Ct.Op.27. So the Court's reasoning directly maps onto the 2023 REMS as well.

Further, Louisiana suffers unrecoverable (due to FDA's sovereign immunity) "financial injury" given the economic costs of this scheme. *Id.* The "same facts" that establish Louisiana's standing also "establish irreparable harm." *Id.*

Because the district court correctly concluded that Louisiana (a) is likely to succeed in this challenge to the 2023 REMS and (b) suffers irreparable harm every day that the 2023 REMS remains in effect, preliminary relief is plainly warranted. *See, e.g.*, *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024) (en banc) ("The first factor—likelihood of success on the merits—is 'the most important.'"); *Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 399 (5th Cir. 2013) (likelihood of success on the merits and irreparable harm are "the most important" preliminary-relief factors). But, in a strange turn of events, the court denied Louisiana's relief and imposed an *indefinite* stay under the heading "Balance of Harms/Public Interest." Dist.Ct.Op.28.

The district court erred in denying relief. Consider just two reasons why: (1) while Louisiana is suffering irreparable harm, the district court identified no irreparable harm from entering a § 705 stay, which means the balance favors Louisiana; and (2) this Court already held that the

5

public has no interest in the illegal 2023 REMS, FDA and the public "will not be injured by" a § 705 stay, and "the public interest is disserved by a drug that does not afford adequate protections to its users." *Alliance II*, 78 F.4th at 251–53. A § 705 stay is warranted.

The only thing that has changed since *Alliance II* is that FDA has now proclaimed for over a year that it will "study" and "review" the 2023 REMS. But when pressed by the district court in February 2026, FDA said (a) "I don't have a timeline I can give Your Honor," (b) some part of the review (but "*not* the whole review") might be complete by 2027, and (c) FDA "can't talk specifically about what they are doing" but they are somewhere "in the data collection phase of the study." Tr.33–34; *accord* Dist.Ct.ECF.20-26 at 8. In other words, as of February 2026 (and still today[4]), FDA did not even have the data sufficient to conduct a review.

The district court nevertheless relied on FDA's purported study to deny preliminary relief to Louisiana and then indefinitely stay this lawsuit to see what, if anything, comes of the supposed review.

---

[4] Remarkably, the day after the decision below, FDA (non)updated its website to say that, "[a]s of April 2026," FDA *still* does not have sufficient data for its "saftey [sic] study on mifepristone." *Questions and Answers on Mifepristone for Medical Termination of Pregnancy Through Ten Weeks Gestation*, U.S. Food & Drug Admin., perma.cc/4TMY-SWYQ.

6

This motion challenges the denial of preliminary relief (rather than the stay decision). For there is no justification—given Louisiana's, FDA's, and the district court's agreement that the 2023 REMS is unlawful—for forcing Louisiana to suffer ongoing irreparable harm unless and until FDA decides what it wants to do (or not do) with the 2023 REMS at some unidentified future date. (The district court has requested only a status update in six months.) Such a result flips the APA on its head—the whole point of which is to ensure timely judicial review and vacatur of unlawful agency actions. *See* § 705 ("Relief pending review").

Each month that passes is not just time lost; it is some 1,000 Louisiana lives lost. For these reasons, the Court should enter the same § 705 stay it upheld in *Alliance I* and *Alliance II* or, alternatively, enjoin enforcement of the 2023 REMS pending appeal.

## JURISDICTIONAL STATEMENT

On April 7, the district court issued its decision denying Plaintiffs' motion for preliminary relief and granting the Federal Defendants' motion to stay the case. Ex. A. The State appealed that ruling the next day. Dist.Ct.ECF.269. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

7

## STANDARD OF REVIEW

Plaintiffs request a stay of the 2023 REMS or, alternatively, a preliminary injunction pending appeal. *See* 5 U.S.C. § 705; Fed. R. Civ. P. 65. Plaintiffs thus "must show '(1) a strong likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) that the balance of hardships weighs in their favor if injunctive relief is granted; and (4) that the public interest favors such relief.'" *Vapor Tech. Ass'n v. Graham*, 167 F.4th 302, 305 (5th Cir. 2026) (citation omitted); *see Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1143–44 (5th Cir. 2021) (applying these factors under § 705). The first two are the "most important." *Abbott*, 110 F.4th at 706; *Moore*, 507 F. App'x at 399. This Court applies a "sliding-scale" approach to these factors, such that Plaintiffs' strong showing on one or more factors requires only "some" showing on the others. *TitleMax of Tex., Inc. v. City of Dallas*, 142 F.4th 322, 328–29 (5th Cir. 2025).

## ARGUMENT

The issue before this Court is remarkably narrow because the district court resolved nearly the entire preliminary-relief analysis in Plaintiffs' favor. *First*, the district court concluded—as two panels of this Court concluded—that Plaintiffs are likely to succeed in their APA

challenge to the 2023 REMS. *Second*, the district court concluded that Louisiana not only has standing but is suffering irreparable harm every day that the 2023 REMS remains in effect.

That leaves only the *third* issue: whether the equities and public-interest inquiries, which merge in this context, *see Nken v. Holder*, 556 U.S. 418, 435 (2009), somehow override Louisiana's entitlement to preliminary relief and warrant an indefinite stay of this litigation while Louisiana undisputedly continues to suffer irreparable harm. They do not. The proper course is to enter preliminary relief, just what this Court preserved in *Alliance I* and *Alliance II*.

## I.    AS THIS COURT AND THE DISTRICT COURT HAVE CONCLUDED, PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.[5]

### A. The 2023 REMS Is Unlawful.

Start with the merits analysis that this Court has twice conducted—and in which the district court concurred. Arbitrary-and-capricious review "requires that agency action be reasonable and reasonably explained," meaning that the agency "has reasonably

---

[5] Given current space constraints, this analysis is necessarily more abbreviated than the analyses preserved below and in this Court's prior decisions. *See* Dist.Ct.ECF.20-26 at 9–14 (APA), 17–25 (standing); Dist.Ct.ECF.111 at 2–13 (standing), 15–18 (APA).

considered the relevant issues and reasonably explained the decision." *Wages & White Lion*, 16 F.4th at 1136 (citation omitted). The fatal defect in the 2023 REMS is that the Biden FDA removed the in-person dispensing requirement with no legitimate justification for doing so. *Alliance I*, 2023 WL 2913725, at *17–18; *Alliance II*, 78 F.4th at 249–51. The district court well summarized the two bases for this Court's conclusions in *Alliance I* and *Alliance II*. Dist.Ct.Op.7–11.

*First*, FDA based its removal of the in-person dispensing requirement "on the absence of data that [FDA] had only five years previously intentionally eliminated," using that absence to justify deeming mifepristone safe without an in-person dispensing requirement. Dist.Ct.Op.26–27 (citing *Alliance II*, 78 F.4th at 249). This Court was astounded by FDA's "declar[ation] [that] the absence of non-fatal adverse-event reports means mifepristone is 'safe.'" *Alliance I*, 2023 WL 2913725, at *17. "This ostrich's-head-in-the-sand approach is deeply troubling," the Court said. *Id.* "It's unreasonable for an agency to eliminate a reporting requirement for a thing and then use the resulting absence of data to support its decision"—and thus "it [is] unlikely that

10

plaintiffs' arbitrary-and-capricious challenges will fail on the merits." *Id.* at *17–18; *accord Alliance II*, 78 F.4th at 249–50.

*Second*, FDA also "relied on various literature relating to remote prescription of mifepristone—despite FDA's admission that the literature did not affirmatively support its position." Dist.Ct.Op.27 (quoting *Alliance II*, 78 F.4th at 250). That makes this an easy arbitrary-and-capricious case: "Especially in light of the unreliability of the adverse-event data, it was not reasonable for FDA to depend on the published literature to support its decision." *Alliance II*, 78 F.4th at 250. Because FDA "did not refer to any literature that affirmatively supported the notion that mifepristone would remain safe and effective even without the in-person dispensing requirement," Plaintiffs "are likely to succeed in showing that [the 2023 REMS] violated the APA." *Id.* at 251.

This Court's own prior merits determinations are correct—and that is even truer today because "HHS Secretary Kennedy and FDA Commissioner Makary [have] essentially acknowledged APA procedural deficits," "stating that FDA's intention to review the mifepristone regulatory framework was precipitated by 'the lack of adequate consideration underlying the prior REMS approvals' and recent safety

11

concerns." Dist.Ct.Op.27–28. Plaintiffs are thus likely to "succeed on the merits of their 2023 REMS challenge." Dist.Ct.Op.28.[6]

**B. Louisiana Has Standing.**

The district court likewise rightly held that Louisiana has Article III standing to challenge the 2023 REMS. "To establish standing, 'a plaintiff must demonstrate: (i) that she has suffered or likely will suffer an injury-in-fact; (ii) that the injury likely was caused or will be caused by the defendant; and (iii) that the injury likely would be redressed by the requested judicial relief." Dist.Ct.Op.16 (citing *Texas v. United States*, 126 F.4th 392, 407 (5th Cir. 2025)). Each element is satisfied. Dist.Ct.Op.16–25.

1. The district court correctly determined that Louisiana suffers at least two distinct injuries in fact.

*First* is the harm to Louisiana's "sovereign interest in the power to create and enforce a legal code." Dist.Ct.Op.22 (quoting *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015)). Louisiana expressly prohibits

---

[6] Omitted here for efficiency, Louisiana also has an APA claim based on the Comstock Act, which is an independent basis for likelihood of success on the merits. *See* Dist.Ct.ECF.20-26 at 13–14; *Alliance II*, 78 F.4th at 267–70 (Ho, J., concurring in part and dissenting in part).

12

abortion (with narrow exceptions), including the dispensing of mifepristone to induce an abortion. Dist.Ct.Op.18 n.10 (collecting statutes). Louisiana law also expressly "reaffirm[s] the longstanding public policy of this state that every unborn child is a human being from the moment of conception." *Id.* (quoting La. R.S. 40:1061.1(A)(1)). Yet Louisiana law is violated some 1,000 times a month when mifepristone is mailed into Louisiana to effectuate illegal abortions. "Louisiana suffers sovereign harm each time those laws are circumvented." Dist.Ct.Op.28. That is a textbook injury-in-fact.[7]

*Second* is monetary injury. As the district court recounted from this Court's precedents, "[a] state's increased medical costs, such as increased Medicaid costs due to a federal agency action, can constitute a 'pocket-book injury' sufficient to satisfy the injury-in-fact requirement of standing." Dist.Ct.Op.23–24; *see Texas*, 126 F.4th at 408, 411, 413 n.26. And that is the case here: Louisiana's unrebutted record evidence shows that many of the 1,000 mifepristone abortions per month in Louisiana

---

[7] Louisiana also independently established monetary harm in the form of its reasonable "costs to mitigate or avoid" these legal violations. *See* Dist.Ct.ECF.111 at 3–4 & n.4 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

13

are for women on Medicaid. Dist.Ct.Op.24. That record evidence also shows that, by FDA's own telling, roughly 1 in 25 women who take mifepristone will end up in the emergency room. *Id.*; *accord Alliance I*, 2023 WL 2913725, at \*10 ("emergency room care is statistically certain"). The same evidence shows that Louisiana has incurred "more than $92,000 in [such] Medicaid costs" due to only two mifepristone-induced abortions requiring emergency care in 2025—a number that is "likely" severely underinclusive. Dist.Ct.Op.25. "[B]ecause 'even one dollar's worth of harm' is sufficient, Louisiana has put forth sufficient evidence to demonstrate a substantial likelihood of success in proving it has suffered financial injury for standing purposes." *Id.* (citation omitted).

2. The only real question below was traceability and redressability, which "are often flip sides of the same coin" since "if a defendant's action causes an injury, enjoining the action ... will typically redress that injury." Dist.Ct.Op.17 (citation modified). On this question, the district court made two key points.

*First*, the district court rejected FDA's claim that the above harms are not traceable to the 2023 REMS since "Louisiana is not a regulated party." Dist.Ct.Op.18. That is because "standing may exist where

14

[independent] actors predictably respond to the challenged action" in a manner that generates those harms. Dist.Ct.Op.19 (collecting cases). That is the case here because "the evidence in the record shows that the 'independent actors'—that is, the out-of-state medical providers prescribing mifepristone via telemedicine or mail—responded to the 2023 REMS by expanding mifepristone access to pro-life states like Louisiana in ways that were entirely predictable." Dist.Ct.Op.19–20.

In fact, this was not just the *predictable* consequence of the REMS, but its *intended* consequence. The Biden Administration openly advertised that it was seeking to preserve abortion in pro-life states after *Dobbs*. Dist.Ct.Op.20–21; *accord* Dist.Ct.ECF.20-26 at 4; Dist.Ct.ECF.111 at 9. The district court thus correctly held that "there is evidence that the 2023 REMS was approved without adequate consideration, at least in part, to circumvent anti-abortion states' ability to regulate abortion." Dist.Ct.Op.21.

That is the end of the traceability analysis: "The government generally may not target a [state] through stringent and allegedly unlawful regulation, and then evade the resulting lawsuit[] by claiming that the target[] of its regulation should be locked out of court as [an]

15

unaffected bystander[]." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 125 (2025); *Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 520–21 (2026). It is also the end of the redressability analysis since "the fact that a regulation was designed to produce a particular effect on the market ordinarily means that the likely result of vacating that regulation would be to reduce that effect on the market." *Diamond*, 606 U.S. at 117.

*Second*, the district court correctly recognized that Louisiana need not show that the 2023 REMS is *solely* responsible for Louisiana's harms, or that vacating the REMS would *completely* eliminate Louisiana's harms. *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). There are, of course, other actors "influenc[ing] the arrival of mifepristone in Louisiana," including pro-abortion states and out-of-state prescribers. Dist.Ct.Op.23. "But there can be little doubt that the 2023 REMS is a factor, which is all that is required for Louisiana to show injury-in-fact and traceability." *Id.* After all, *but for the 2023 REMS*, no out-of-state prescriber could legally (under federal law) mail mifepristone into Louisiana. In that way, the 2023 REMS is the indispensable ingredient in the nearly 1,000 mifepristone abortions occurring in Louisiana every month. "Thus, even if the 2023 REMS is not the 'sole cause' of Louisiana's

16

[] harms, it has surely 'exacerbated' them; 'that is sufficient' for standing to assert its claims." Dist.Ct.Op.23 (citing *Texas v. United States*, 50 F.4th 498, 519 (5th Cir. 2022)).

## II.    AS THE DISTRICT COURT CONCLUDED, LOUISIANA IS SUFFERING IRREPARABLE HARM.

The district court also correctly concluded that Louisiana "establish[ed] irreparable harm." Dist.Ct.Op.28.

*First*, the 2023 REMS operates "in derogation of Louisiana law and interferes with Louisiana's ability to enforce its laws and implement the policy choices of its citizens." *Id.* In particular, "[b]y permitting medical providers to prescribe mifepristone remotely, the 2023 REMS facilitates the distribution of mifepristone into Louisiana notwithstanding contrary law." *Id.* "Louisiana suffers sovereign harm each time those laws are circumvented," the court explained. *Id.* And because "[n]o remedy at law can redress that sovereign harm," *id.*, it is irreparable, *see Alliance II*, 78 F.4th at 251.

*Second*, the district court recognized that Louisiana is suffering irreparable economic harm. Specifically, as discussed above, the 2023 REMS is causing direct and predictable economic injuries to Louisiana—and those injuries "cannot be 'remedied where, as here, the defendant is

entitled to sovereign immunity.'" Dist.Ct.Op.28 (citing *Alliance II*, 78 F.4th at 251).

## III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY OR INJUNCTION.

So far, Louisiana has satisfied the two "most important" factors. *Abbott*, 110 F.4th at 706; *Moore*, 507 F. App'x at 399. In fact, Louisiana is so strong on those two core factors that, under this Court's "sliding-scale" approach, *TitleMax of Tex., Inc.*, 142 F.4th at 329, even a negligible showing on the "less significant" equities and public-interest inquiries, *Moore*, 507 F. App'x at 399, would warrant a § 705 stay. *See, e.g., Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) ("If the plaintiff is likely to win on the merits, the balance of harms need not weigh as heavily in his favor.").

In all events, those remaining inquiries are easily resolved for Louisiana—and the district court's reasoning otherwise is misplaced.

### A. The Remaining Factors Are Straightforward.

Begin with the equities and recall the district court's emphatic determination that Louisiana is suffering irreparable harm. The district court did not identify any cognizable irreparable harm to any other party that would be caused by the § 705 stay requested by Plaintiffs. *See*

18

*Alliance II*, 78 F.4th at 251 ("This risk of irreparable harm must be weighed against any injury FDA and [the drug manufacturers] would sustain as a result of the [§ 705] stay order, as well as against the public interest."). Common sense and the law of gravity suggest, therefore, that Louisiana must win any balancing analysis.[8]

That point is reinforced by this Court's own determination that it would be *against the public interest* to allow the 2023 REMS to remain in effect. *First*, although "anytime the Government is enjoined from enforcing its statutes, or regulations, 'it suffers a form of irreparable injury,'" "neither the FDA nor the public has any interest in enforcing a regulation that violates federal law." *Alliance II*, 78 F.4th at 251 (citation omitted). "In this regard, the government/public-interest analysis collapses with the merits"—and "[i]t follows that FDA and the public will not be injured by an order staying" the 2023 REMS. *Id.* at 251–52.[9]

---

[8] The district court asserted in passing that the drug manufacturers "have a substantial financial interest" because "[a]ny change in the current regulatory regime ... would affect their profit margins and compliance costs." Dist.Ct.Op.30. But the district court did not elaborate, deem that interest an irreparable harm, or even weigh it against Louisiana's irreparable harm.

[9] The court "note[d]" that the Supreme Court stayed the *Alliance* district court's § 705 stay, thereby "allow[ing] the challenged FDA actions with respect to mifepristone to continue throughout the course of the

*Second*, the Court recognized that, "of course, the public interest is disserved by a drug that does not afford adequate protections to its users." *Id.* at 253. And this preliminary-relief record shows that the 2023 REMS lacks "sufficient consideration of the effects [its] changes would have on patients." *Id.*[10]

These basic facts confirm that preliminary relief is warranted: (a) Louisiana is suffering irreparable harm absent a § 705 stay, (b) no other party will suffer irreparable harm with a § 705 stay, and (c) the public interest is decidedly against keeping the 2023 REMS in effect.

## B. The District Court's Considerations Are Misplaced.

Rather than take this straightforward path, the district court offered several thoughts under the heading "Balance of Harms/Public

---

appeal." Dist.Ct.Op.31. This statement implies that perhaps the public *does* have an interest in the enforcement of illegal regulations. That is incorrect. As the ultimate *Alliance* decision illustrates, the Supreme Court believed there was no Article III standing. Thus, the "no public interest in enforcing a regulation that violates federal law" principle was not triggered. Not so here, where the district court agreed that Louisiana has standing and is likely to succeed on the merits.

[10] These points address the district court's puzzling assertion that there are cognizable "reliance interests on [the 2023 REMS]" that should be preserved. Dist.Ct.Op.35. *Alliance II* said exactly the opposite in emphasizing that the public has no interest in the perpetuation of this unlawful and unreasoned regulation.

20

Interest" that led the court to deny preliminary relief. Each consideration is misplaced.

1. The district court principally resisted becoming "a forum for resolving moral or policy disagreements" (or "scientific or medical judgments"). Dist.Ct.Op.28–29. But as this Court's (and the district court's) merits analyses reflect, this lawsuit asks no court to resolve moral, policy, scientific, or medical disagreements; it asks only for a plain APA analysis, which courts run every day. *See Alliance II*, 78 F.4th at 249–50 (explaining why the 2023 REMS "was [likely] arbitrary and capricious"); *accord* Dist.Ct.Op.26–28. To the extent the district court was invoking the Supreme Court's discussion of moral and policy objections in *Alliance*, that discussion was in the context of explaining why such objections do not establish Article III standing. *See* 602 U.S. at 396. That is not an issue here.

2. The district court also worried "that this case arises amid multiple parallel lawsuits across the country addressing the same regulatory issues surrounding access to mifepristone, creating a substantial risk of inconsistent judicial outcomes on a question of

21

nationwide importance." Dist.Ct.Op.31, 35. That worry appears to come in two parts, each unavailing.

*First* is a concern that a court elsewhere considering similar issues might reach a different conclusion. But that is an unremarkable feature of high-profile litigation, which often occurs on multiple fronts and leads to diverse results. Taken to its logical conclusion, this concern would paralyze every judge, preventing them from independently deciding important issues in their best judgment. *Cf. Buenrosto-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (resolving immigration issue over which district courts have split nationwide). That is not the proper judicial role.

More fundamentally, the *Alliance I* Court already rejected a similar concern. There, the Court expressed "every respect for fellow federal courts," but refused to "embrace an argument that would, in effect, allow the decision of an out-of-circuit district court to impel us towards [a stay] that would be otherwise inappropriate." 2023 WL 2913725, at *19. So here: The Court should reject the notion that the mere possibility of contrary decisions elsewhere in the Nation can be a basis for denying preliminary relief Louisiana needs.

*Second* is a concern that the universal scope of a § 705 stay would run into "settled limits on equitable relief." Dist.Ct.Op.31–33. Four important points in response.

One, that chafes against this Court's precedents. This Court has held that "the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). That is why *Alliance I* and *Alliance II* upheld a universal § 705 stay.

Two, the district court's conflation (Dist.Ct.Op.32) of the *equitable* relief considered in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), with the *legal* relief provided by § 705 runs into the same problem. By its own terms, *CASA* expressly avoided the "distinct" question of vacatur under the APA. *CASA*, 606 U.S. at 847 n.10; Dist.Ct.ECF.20-26 at 17. Accordingly, *CASA* does not excuse the district court from applying this Court's own vacatur precedents.

Three, it is not Louisiana's fault that only a universal § 705 stay could remedy Louisiana's harm. Louisiana would be open to a Louisiana-

23

specific remedy—except that no one can figure out how to build one considering the indiscriminate, nationwide attacks from doctors and activists in pro-abortion states that FDA has facilitated. The court below directly addressed that issue, and the federal government threw up its hands. *See* Tr.53 (Q: "I asked plaintiffs' counsel if she could conceive of any remedy limited to the parties of this case, Rule 65 remedy. Can you think of any?" A: "We aren't proposing any narrowing of relief...." Q: "All right. I'm asking you: Can you think of any way, as a technical matter, to do that in this case?" A: "I can't, Your Honor.").

Because only a universal § 705 stay appears workable, the right answer is not to level down and deny Louisiana the relief it needs just because the relief would sweep more broadly. For all the district court's reliance on *CASA*, *CASA* squarely holds in the equity context that "courts generally 'may administer complete relief *between the parties*'" even if doing so happens to benefit others. 606 U.S. at 851–52 (using the example of ordering a neighbor to turn loud music down or off; that order "will necessarily benefit the defendant's surrounding neighbors too; there is no way 'to peel off just the portion of the nuisance that harmed the plaintiff'"). All the same here.

24

Four, it bears noting that none of this is relevant to the remaining preliminary-relief factors—the equities and public interest. This discussion at most goes to *scope* of relief, not whether Louisiana is *entitled* to relief. The district court thus erred multiple times over in citing this discussion to deny Louisiana preliminary relief.

3. Last and "most important[]" in the district court's view is that FDA is entitled to a stay because it says it is "review[ing]" the 2023 REMS. Dist.Ct.Op.35. The lower court held "the APA deficiencies [as] found by the Fifth Circuit"—that the 2023 REMS was based on inadequate data—somehow "prevent[ed]" it from issuing preliminary relief because "ultimately it is FDA, not this Court, that possesses the expertise to evaluate scientific evidence and make public health judgments." Dist.Ct.Op.33–34. The lower court was willing to overlook clear "evidence of ongoing harm owing to the 2023 REMS," because "FDA has acknowledged its own deficits and has initiated an ongoing review of mifepristone." *Id.* At bottom, the court concluded that "FDA's review should be conducted and completed free from judicial interference." Dist.Ct.Op.35.

25

This reasoning is badly mistaken. To start, it would allow the government to avoid preliminary review in *every* APA case. More, the question before the Court is legal not scientific: Is the 2023 REMS lawful? No amount of further study or agency action will change that answer (which this Court has twice answered in the negative). More fundamentally, it makes no sense to *deny* preliminary relief on the grounds that agency action is *so* unlawful that the agency openly concedes a review is necessary. That is the strongest point in favor of *granting* preliminary relief, not giving FDA a free pass to maintain a concededly unlawful regulation. In short, FDA's review cannot magically render the 2023 REMS lawful, nor does it provide grounds to refuse to set aside unlawful action as ensured by § 705.

## CONCLUSION

The Court should stay the 2023 REMS under § 705 pending appeal or, alternatively, enjoin its enforcement pending appeal.

Respectfully submitted,

*/s/ Erin M. Hawley*
Erin M. Hawley
Erik C. Baptist
Julie Marie Blake
ALLIANCE DEFENDING
FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
ehawley@ADFlegal.org

*Counsel for Louisiana and
Rosalie Markezich*

Dated:    April 17, 2026

*/s/ J. Benjamin Aguiñaga*
Liz Murrill
  Attorney General
J. Benjamin Aguiñaga
  Solicitor General
Caitlin Huettemann
  Assistant Solicitor General
OFFICE OF THE LOUISIANA
ATTORNEY GENERAL
1885 N. Third Street
Baton Rouge, LA 70802
Telephone: (225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Louisiana*

## CERTIFICATE OF SERVICE

I certify that on April 17, 2026, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

/s/ *J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,199 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated:    April 17, 2026