# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 26-30203

STATE OF LOUISIANA, by & through its Attorney General,
Liz Murrill; ROSALIE MARKEZICH,

*Plaintiffs-Appellants/Cross-Appellees,*

v.

FOOD & DRUG ADMINISTRATION; MARTY MAKARY,
Commissioner, U.S. Food and Drug Administration;
RICHARD PAZDUR, in his official capacity as Director, Center
for Drug Evaluation & Research, U S Food & Drug Administration;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES; ROBERT F. KENNEDY, JR., Secretary,
U.S. Department of Health and Human Services,

*Defendants-Appellees,*

GENBIOPRO, INCORPORATED,

*Intervenor-Appellee/Cross-Appellant,*

v.

DANCO LABORATORIES, L.L.C.,

*Intervenor-Appellee/Cross-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA, LAFAYETTE

**BRIEF OF *AMICI CURIAE* NC VALUES INSTITUTE
AND WORLD FAITH FOUNDATION
IN SUPPORT OF APPELLANTS AND REVERSAL**

DEBORAH J. DEWART
DEBBIE DEWART, ATTORNEY AT LAW
*Attorney for Amici Curiae*
111 Magnolia Lane
Hubert, North Carolina 28539
(910) 326-4554

COUNSEL PRESS
A ▶ Proceed Service
The Appellate Experts®

(800) 4-APPEAL • (132198)

# SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS
## No. 11037
## FIFTH CIRCUIT RULE 29.2

The undersigned counsel certifies that the following persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Deborah J. Dewart, Counsel for *Amici Curiae*

NC Values Institute, *Amicus Curiae*

World Faith Foundation, *Amicus Curiae*

The undersigned counsel also certifies that each of the *Amici Curiae*, NC Values Institute and World Faith Foundation, is a nonprofit corporation that has no parent corporation, is not a publicly held corporation, and does not issue stock.

DATED: June 16, 2026

/s/Deborah J. Dewart
Deborah J. Dewart
Counsel for *Amici Curiae*
*NC Values Institute*
*World Faith Foundation*

i

# TABLE OF CONTENTS

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS .......................... i

TABLE OF AUTHORITIES .................................................................. iv

INTEREST OF *AMICI CURIAE* ........................................................ 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................... 2

ARGUMENT ..................................................................................... 3

I. DENIAL OF JUDICIAL RELIEF CAUSES A MULTITUDE OF GRAVE IRREPARABLE HARMS. ......................................................... 3

    A. The loss of human life – young women and their unborn children – is the most irreparable of injuries. ..................................... 5

    B. The injuries to the State of Louisiana are irreparable. ..................... 6

        1. The 2023 REMS causes irreparable injury to Louisiana's sovereignty in the enforcement of state law. .................. 6

        2. The 2023 REMS causes irreparable "pocketbook injuries" to Louisiana. ............................................................... 8

    C. The 2023 REMS threatens irreparable harm to third parties, including pro-life doctors faced with the demand to complete botched abortions and women who are tricked or coerced into aborting their unborn children ............................................. 9

II. THE HARM TO LOUISIANA AND ITS CITIZENS FAR OUTWEIGHS THE ALLEGED HARM TO DEFENDANTS. ................................... 13

    A. The manufacturers should be *prosecuted*, not *protected* for their violations of federal law .............................................. 13

    B. Lost sales from illegal activity do not constitute irreparable harm .................................................................. 14

C.     There is no public interest in perpetuating an illegal practice and irreparable harm .......................................................................... 15

D.     The FDA can—and indeed should—review relevant data about the dangers of abortion-producing drugs ............................................ 16

CONCLUSION ............................................................................................. 17

CERTIFICATE OF COMPLIANCE ................................................................. 18

CERTIFICATE OF SERVICE .......................................................................... 19

ECF CERTIFICATIONS ................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*All. for Hippocratic Med. v. United States Food & Drug Admin.*,
2023 U.S. App. Lexis 8898 (5th Cir. 2023) ...................................................... 17

*All. for Hippocratic Med. v. United States Food & Drug Admin.*,
78 F.4th 210 (5th Cir. 2023) ...................................................................... 9-15

*All. for Hippocratic Med. v. United States Food & Drug Admin.*,
602 U.S. 367 (2024) ................................................................................ 14, 15

*Barr v. Lee*,
591 U.S. 979 (2020) ..................................................................................... 5

*Bost v. Ill. State Bd. of Elections*,
146 S. Ct. 513 (2026) .................................................................................. 8

*Bours v. United States*,
229 F. 960 (7th Cir. 1915) ............................................................................ 12

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) .................................................................................... 11

*Cameron v. EMW Women's Surgical Ctr*., P.S.C.,
595 U.S. 267 (2022) ..................................................................................... 8

*Clarke v. Commodity Futures Trading Comm'n*,
74 F.4th 627 (5th Cir. 2023) ......................................................................... 4

*Danco Lab'ys v. Louisiana,*
2026 U.S. Lexis 2037 (2026) .................................................................... 13, 14

*Diamond v. Charles*,
476 U.S. 54 (1986) ...................................................................................... 6

*Dobbs v. Jackson Women's Health Organization,*
597 U.S. 215 (2022) ........................................................................ 3, 5, 6, 10, 13

*Ellingburg v. United States*,
146 S. Ct. 564 (2026)..................................................................... 7

*FCC v. Next Wave Pers. Commc'ns, Inc.*,
537 U.S. 293 (2003) .................................................................... 16

*Heath v. Alabama*,
474 U.S. 82 (1985)........................................................................ 7

*Hollingsworth v. Perry*,
558 U.S. 183 (2010) .................................................................... 13

*Liu v. SEC*,
591 U.S. 71 (2020)...................................................................... 14

*Louisiana v. Biden*,
55 F.4th 1017 (5th Cir. 2022) .................................................. 4, 15

*Louisiana v. EEOC*,
705 F. Supp. 3d 643 (W.D. La. 2024) ........................................ 7, 9

*Louisiana v. EEOC*,
784 F. Supp. 3d 886 (W.D. La. 2025) ........................................... 7

*Louisiana v. FDA*,
2026 U.S. App. LEXIS 12760 (5th Cir. May 1, 2026).....................3-6, 8, 14-16

*Maine v. Taylor*,
477 U.S. 131 (1986)...................................................................... 8

*McCulloch v. Maryland*,
17 U.S. 316 (1819)........................................................................ 6

*N. Mariana Islands v. United States*,
686 F. Supp. 2d 7 (D.D.C. 2009)................................................ 15

*Texas v. Biden*,
10 F.4th 538 (5th Cir. 2021) ...................................................... 16

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) ............................................................. 6

*Texas v. United States*,
126 F.4th 392 (5th Cir. 2025) ............................................................ 9

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ......................................................................... 12

*United States v. United Liquors Corp.*,
1956 U.S. Lexis 1671 (1956) ............................................................ 14

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000) ........................................................................... 8

*Wages & White Lion Invs., LLC v. FDA*,
16 F.4th 1130 (5th Cir. 2021) ........................................................ 4, 9

*Yates v. United States*,
574 U.S. 528 (2015) ........................................................................... 8

*Zedner v. United States*,
547 U.S. 489 (2006) ......................................................................... 15

**STATUTES**

5 U.S.C. § 705 .................................................................................... 4

5 U.S.C. § 706(2)(A) .................................................................... 14, 16

LA. STAT. ANN. § 14:87.7 ................................................................... 6

LA. STAT. ANN. § 14:87.8.1 ................................................................ 6

LA. STAT. ANN. § 14:87.9(A) ......................................................... 7, 15

LA. STAT. ANN. § 40:1061 ................................................................... 6

LA. STAT. ANN. § 40:1061.1(A)(1) ..................................................... 5

LA. STAT. ANN. § 40:1061.1(C) ............................................................... 7, 15

LA. STAT. ANN. § 40:1061.11(A) ................................................................. 7

18 U.S.C. §1462(c) .................................................................... 13, 14

21 U.S.C. § 355(d) ....................................................................... 16

## OTHER AUTHORITIES

21 C.F.R. § 314.71 ....................................................................... 16

https://plancpills.org.................................................................... 2

https://aidaccess.org/en/ ................................................................ 2

https://www.theguardian.com/world/article/2024/may/14/abortion-bans-shield-laws-telehealth-pills ....................................................................... 2

# INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* respectfully urge this Court to expedite the appeal, reverse the District Court ruling, and grant the relief requested by Plaintiffs with respect to the 2023 REMS.

World Faith Foundation is a California non-profit, tax-exempt corporation formed to preserve and defend the customs, beliefs, values, and practices of religious faith, as guaranteed by the First Amendment, through education, legal advocacy, and other means. WFF's founder is James L. Hirsen, professor of law at Trinity Law School and Biola University in Southern California and author of New York Times bestseller, *Tales from the Left Coast*, and *Hollywood Nation*. Mr. Hirsen is a frequent media commentator who has taught law school courses on constitutional law.

NC Values Institute is a North Carolina nonprofit corporation established to preserve and promote faith, family, and freedom through public policies that protect constitutional liberties, including the right to live and work according to conscience and faith. See https://ncvi.com. North Carolina is fighting a black market cartel of abortion pills, illegally shipped into the state from New York, Canada and India. In 2023, NC outlawed the shipping of abortion pills directly to women and required

---

[1] The parties have consented to the filing of this brief. *Amicus curiae* certifies that no counsel for a party authored this brief in whole or in part and no person or entity, other than *amicus*, its members, or its counsel, has made a monetary contribution to its preparation or submission.

that the first pill be dispensed in person by the prescribing doctor. However, certain websites[2] have made "do-it-yourself" abortions very accessible without a physician's care and oversight. In 2023, an estimated 2,000 abortions per month were occurring in NC from these illegal drugs, often facilitated by "shield laws" protecting shipments of abortion drugs into pro-life states and evading state law restrictions.[3] NC has a vital interest in the outcome of Louisiana's case.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Irreparable harm is a key element Plaintiffs must satisfy in this case. Standing is undisputed. *Amici curiae* write to highlight the *grave and serious* nature of the multiple irreparable injuries caused by the FDA's 2023 REMS modification eliminating the in-person medical appointment previously required to obtain abortion-producing drugs.

The 2023 REMS leads to multiple violations of federal and state law, monetary harm, and tragic loss of life for countless unborn children and women harmed by the dangers of ingesting abortion drugs without medical supervision. Use of the mails to ship abortion drugs violates both federal law (the Comstock Act) and Louisiana state law. Louisiana has adopted a pro-life policy and generally banned

---

[2] For example, https://plancpills.org; https://aidaccess.org/en/.
[3] *See* https://www.theguardian.com/world/article/2024/may/14/abortion-bans-shield-laws-telehealth-pills

abortion in the wake of *Dobbs*. The 2023 REMS threatens its state sovereignty and causes substantial economic harm. In addition, there are potential conscience violations for both emergency room doctors and the young women who are tricked or coerced by family or friends who acquire abortion drugs through the mail. This case is literally a matter of life and death for many young mothers and their unborn babies. Ironically, the deceit and coercion facilitated by the 2023 REMS deprives women of *choice*—like Plaintiff Rosalie Markezich, who was forced into chemically aborting her baby, thwarting her intent to give birth and raise her child. These harms outweigh the alleged "public interest" in giving the FDA more time to conduct studies and sort things out.

## ARGUMENT

### I. DENIAL OF JUDICIAL RELIEF CAUSES A MULTITUDE OF GRAVE IRREPARABLE HARMS.

"In *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), the Supreme Court returned the regulation of abortion to the states." [4] *Louisiana v. FDA*, 2026 U.S. App. LEXIS 12760, *4 (5th Cir. May 1, 2026). Pro-abortion advocates quickly demanded action to ensure broad access to abortifacient drugs (specifically mifepristone), especially in states like Louisiana that chose to protect unborn life. The Biden Administration and the U.S. Food and Drug Administration (FDA)

---

[4] More precisely, "the authority to regulate abortion must be returned *to the people and their elected representatives*." *Dobbs*, 597 U.S. at 292 (emphasis added).

accommodated these demands by eliminating the requirement for an in-person medical appointment before dispensing mifepristone. As a result, the 2023 REMS ("Risk Evaluation and Mitigation Strategy") for the drug has led to egregious, irreparable harms to multiple parties, including the State of Louisiana, countless unborn children, and young women (like Plaintiff Rosalie Markezich) placed at serious risk by the lack of adequate safeguards. These irreparable injuries are virtually certain to be repeated and far outweigh any harm to Defendants that might result in the absence of judicial intervention.

Plaintiffs sought a stay under the Administrative Procedure Act (5 U.S.C. § 705). As the Fifth Circuit explained, they must show a strong likelihood of success on the merits; irreparable harm in the absence of a stay that is not outweighed by the harm to other parties; and that the public interest favors a stay. *La. v. FDA*, at *9; *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 640–41 (5th Cir. 2023); *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1143–44 (5th Cir. 2021).

*Amici curiae* write to highlight the particularly grave nature of the irreparable injuries that have already occurred and will continue if the judiciary does not act quickly. An irreparable harm is one that has "no adequate remedy at law." *Louisiana v. Biden*, 55 F.4th 1017, 1033-34 (5th Cir. 2022). This case is literally a matter of life and death, coupled with the threat to Louisiana's ability to enact and enforce its

own state law. Once an abortion has been completed, the child cannot be "unaborted." When a dangerous abortion drug causes a young woman's death, her life cannot be restored by any legal remedy.

A. **The loss of human life – young women and their unborn children – is the most irreparable of injuries.**

The State of Louisiana exercised its right, as recognized in *Dobbs*, to adopt a pro-life policy stating that "every unborn child is human being from the moment of conception and is, therefore, a legal person." LA. STAT. ANN. § 40:1061.1(A)(1) (2022). The 2023 REMS obstructs this policy. "Once lost, that sovereign prerogative of protecting unborn life cannot be regained by legal remedy." *La. v. FDA*, at *18. The loss of human life is undoubtedly "the most irreparable of harms." *Barr v. Lee*, 591 U.S. 979, 986 (2020) (Sotomayor, J., dissenting from vacatur of stay). This destructive scheme, which attacks both human life and Louisiana's sovereignty, is surely a quintessential injury-in-fact.

It is ironic to observe how the efforts of "pro-choice" advocates not only destroy unborn life, but the lives and choices of women who ingest mifepristone. The 2023 REMS facilitates the use of deceit and coercion to force unwilling young women to abort their children and/or risk their own lives. Plaintiff Rosalie was forced to end her baby's life after her ex-boyfriend ordered abortion drugs through the mail and bullied her into taking them. Other women may take the drug willing but later wind up in the emergency room when their own lives are threatened.

5

**B.    The injuries to the State of Louisiana are irreparable.**

There are two relevant textbook injuries—loss of human life and pocketbook harm. "[T]he 2023 REMS injures Louisiana by undermining its laws protecting unborn human life and also by causing it to spend Medicaid funds on emergency care for women harmed by mifepristone. Both injuries are irreparable." *La. v. FDA*, at *18.

**1.    The 2023 REMS causes irreparable injury to Louisiana's sovereignty in the enforcement of state law.**

In American government, "the powers of sovereignty are divided between the government of the Union, and those of the States. They are each sovereign, with respect to the objects committed to it, and neither sovereign with respect to the objects committed to the other." *McCulloch v. Maryland*, 17 U.S. 316, 410 (1819). Under *Dobbs*, abortion regulation in the States is an object committed to the people and their elected representatives.

The power to create and enforce a legal code "is one of the quintessential functions of a State." *Diamond v. Charles*, 476 U.S. 54, 65 (1986). Louisiana has a "sovereign interest" in exercising that power. *La v. FDA*, at *12 (quoting *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015) (internal quotations omitted). Abortion is generally illegal in Louisiana, with limited exceptions including those "medically necessary to prevent the death or substantial risk of death of the mother." *See* LA. STAT. ANN. §§ 40:1061, 14:87.7, 14:87.8.1. The 2023 REMS "interferes

with Louisiana's ability to enforce [these] laws and implement the policy choices of its citizens." *Louisiana v. EEOC*, 705 F. Supp. 3d 643, 653 (W.D. La. 2024) (challenge to EEOC rule requiring employers to accommodate elective abortions of employees). Such federal action, in derogation of state law and policy, is blatantly "destructive of state sovereignty." *Louisiana v. EEOC*, 784 F. Supp. 3d 886, 901 (W.D. La. 2025).

**Criminal abortion**. "Foremost among the prerogatives of [state] sovereignty is the power to create and enforce a criminal code." *Heath v. Alabama*, 474 U.S. 82, 93 (1985). Crimes are historically understood to be "public wrong[s]" that are "injur[ies] to the sovereign in its sovereign capacity." *Ellingburg v. United States*, 146 S. Ct. 564, 574–77 (2026) (Thomas, J., concurring) (cataloguing historical sources including Blackstone and Locke). In Louisiana, "criminal abortion" is defined as "knowingly caus[ing] an abortion to occur by means of delivering, dispensing, distributing, or providing a pregnant woman with an abortion-inducing drug." LA. STAT. ANN. § 14:87.9(A); *see also* LA. STAT. ANN. § 40:1061(C) (administering, prescribing, procuring, or selling a drug to end the life of an unborn human being). If a narrow exception applies, Louisiana law requires the drugs to be administered, dispensed, or provided in-person by the prescribing physician—the very safeguard the FDA has eliminated. LA. STAT. ANN. 40:1061.11(A).

The very purpose of the 2023 REMS was "to expand access to medication abortion," and "[p]redictably, the regulation has had that effect in Louisiana, despite the fact that its laws ban the practice." *La. v. FDA*, at *12. The REMS engineered "an effective way for an out-of-state prescriber to place the drug in the hands of Louisianans in defiance of Louisiana law." *Id.* at *14. This attack on Louisiana's laws is an "injury to its sovereignty." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). Louisiana's interest in "the continued enforceability of its own statutes" is also an injury to its sovereignty. *Cameron v. EMW Women's Surgical Ctr.*, P.S.C., 595 U.S. 267, 277 (2022) (citing *Maine v. Taylor*, 477 U.S. 131, 137 (1986)).

**2. The REMS causes irreparable "pocketbook injuries" to Louisiana.**

The loss of life alone is sufficient to doom the 2023 REMS. But adding "extra icing on a cake already frosted," *Yates v. United States*, 574 U.S. 528, 557 (2015) (Kagan, J., dissenting), the REMS imposes monumental "pocketbook injuries" to the injuries to Louisiana's sovereignty. These losses—which amount to hundreds of thousands of Medicaid dollars to fund emergency room visits—also include costs incurred to avoid or mitigate the direct costs. *Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 524 (2026) (Barrett, J., concurring in the judgment). The 2023 mifepristone label "reports that 2.9 to 4.6 percent of women prescribed mifepristone *in-person* will require emergency care" (*La. v. FDA*, at *15)—not to mention the

8

flooding of emergency rooms with women damaged by dangerous abortion drugs distributed unlawfully distributed through the *mail*. These added Medicaid costs caused by the action of a federal agency—here, the FDA—are clearly "pocketbook injuries." *See, e.g., Texas v. United States*, 126 F.4th 392, 408 (5th Cir. 2025).

Such "[m]onetary harm[s] cannot be remedied where . . . the defendant is entitled to sovereign immunity." *All. for Hippocratic Med. v. United States Food & Drug Admin.*, 78 F.4th 210, 251 (5th Cir. 2023), rev'd and remanded on other grounds, 602 U.S. 367 (2024) (citing *Wages & White Lion*, 16 F.4th at 1142). These "economic injuries" are by definition, "irreparable." *Id*.; accord *Louisiana v. EEOC*, 705 F. Supp. 3d at 653 (collecting cases).

C. **The 2023 REMS threatens irreparable harm to third parties, including pro-life doctors faced with the demand to complete botched abortions and women who are tricked or coerced into aborting their unborn children.**

In prior litigation over abortion drugs,[5] suit was filed by several associations, including the Alliance for Hippocratic Medicine. These associations consisted of medical professionals who wish to practice medicine with integrity, consistent with conscience, ethics, and religious faith. Not everyone shares those values but cutting out conscience is a frightening prospect for patients, doctors, and other medical

---

[5] This earlier litigation involved a different set of FDA actions (2016, 2019, and 2021) but the consequences are similar in terms of the dangers to women and consequent increase in emergency room visits.

personnel. This is particularly true following the *Dobbs* decision returning abortion regulation to the states. In a brazen end-run around *Dobbs*, the FDA had inexplicably loosened important safety measures designed to protect women against the dangers of chemical abortion. The FDA's deregulation of chemical abortion forced doctors to participate in elective abortions. Emergency room physicians often had to respond to the harmful complications created by chemical abortions. These consequences were and still are foreseeable—indeed, inevitable. As one doctor phrased it, "the FDA's actions may force me to end the life of a human being in the womb for no medical reason." *All.*, 78 F.4th at 232. Based on the testimony of "multiple doctors" being required to participate in failed chemical abortions, future injury to conscience was then—and remains—virtually certain. *Ibid*. As one doctor declared, severe injury to conscience occurred when his partner was forced to complete the abortion of a child with a heartbeat:

> Due to the amount of bleeding . . . my partner had no choice but to perform an emergency D&C. . . . And because *the preborn baby still had a heartbeat* when the patient presented, my partner felt as though she was forced to participate in something that she did not want to be a part of—completing the abortion.

> *Id.* at 236, citing Dr. Francis Declaration ¶ 13 (emphasis added).

The Fifth Circuit correctly concluded that the doctors "face a concrete injury when they are forced to choose between following their conscience and providing care to

10

a woman experiencing complications" resulting from an attempted chemical abortion. *Id.* at 236.

The burden on conscience is heavy. It is even more personally intrusive and substantial than the contraception mandate in *Burwell v. Hobby Lobby*, 573 U.S. 682 (2014). If the law protects a *corporation* from having to *pay for* religiously objectionable drugs, then surely it protects a *natural person* (a doctor) from having to *personally "perform* or complete an abortion" or related treatment that "conflicts with sincerely held moral beliefs and violates their rights of conscience." *All.*, 78 F.4th at 228-229 (emphasis added).

The Fifth Circuit concluded that the doctors "ha[d] proven up each link in the chain of causation," including the statistical certainty that many "women who take mifepristone will suffer serious medical complications," that hundreds of doctors will treat patients under these circumstances (and many already have), and finally, "that providing such treatment causes the Doctors to violate their rights of conscience" and suffer other serious consequences. *All.*, 78 F.4th at 234. The physicians litigating the case "face[d] a substantial risk of irreparable harm" to conscience. *Id.* at 253. "No legal remedy can adequately redress [their] conscience and mental-distress injuries." *Id.* at 252. Besides the harm to the doctors themselves, "money damages [cannot] remedy the destruction of life." *Id.* at 266 (Ho, J., concurring). The doctors upheld the "national policy of discountenancing abortion

11

as inimical to the national life." *Id.*, quoting *Bours v. United States*, 229 F. 960, 964 (7th Cir. 1915). Moreover, "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and in the judgment).

Although the Fifth Circuit ruled in favor of the medical associations in *Alliance*, the Supreme Court concluded that the doctors failed to establish Article III standing. In Louisiana's case, the FDA's action (eliminating the in-person medical visit requirement) is likely to have a similar impact on the conscience of emergency room doctors opposed to abortion. But there are significant differences. The key plaintiff is the State of Louisiana. The second plaintiff is a young woman who was forced to abort her unborn child—who she wanted to bear—after the child's father obtained abortion drugs by mail and compelled her to take them. The 2023 REMS injures the conscience of young women in desperate situations like this one. Restoring the in-person medical visit requirement would protect such women.

At the very least, this court should consider the irreparable harm to conscience that lurks in the background. Louisiana's pro-life policy and laws protects both women and medical professionals within its borders. The FDA's action threatens grave harm to these persons.

## II. THE HARM TO LOUISIANA AND ITS CITIZENS FAR OUTWEIGHS THE ALLEGED HARM TO DEFENDANTS.

There is no legally cognizable harm—irreparable or otherwise—to defendant manufacturers. Justice Alito said it well: "What is at stake is the perpetration of a scheme to undermine our decision in *Dobbs* v. *Jackson Women's Health Organization*, 597 U.S. 215 (2022), which restored the right of each State to decide how to regulate abortions within its borders." *Danco Lab'ys v. Louisiana*, 2026 U.S. Lexis 2037, *3 (2026) (Alito, J., dissenting). The 2023 REMS is being employed to thwart the efforts of states like Louisiana to protect preborn life. Defendants "have failed to show that they face irreparable injury, without which this Court may not grant a stay. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam)." *Id*. at *6. Their real fear appears to be the threat to reduce their profits from selling these dangerous abortifacient drugs to women who live in pro-life states—and that does not constitute irreparable harm.

### A. The manufacturers should be *prosecuted*, not *protected* for their violations of federal law.

As Justice Thomas noted in his dissent from the Supreme Court's recent grant of defendants' application for stay, federal law prohibits use of the mail to ship "any drug, medicine, article, or thing designed, adapted, or intended for producing abortion." 18 U.S. C. §1462(c); *Danco*, at *2 (Thomas, J., dissenting). "All of this violates the Comstock Act." *All.*, 78 F. 4th at 268 (Ho, J., concurring in part and

13

dissenting in part), rev'd on other grounds, 602 U.S. 367 (2024). The 2023 REMS authorizes precisely what federal law forbids—the mailing of abortion drugs. *See id*. at 267; 5 U.S.C. § 706(2)(A) ("arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). The Comstock Act (18 U.S.C. § 1462) could explicitly tie the 2023 REMS modification to the "arbitrary and capricious" standard under §706(2)(A). Those who violate the law should be prosecuted, not protected by the judicial stay of a ruling that would halt their violations.

**B.      Lost sales from illegal activity do not constitute irreparable harm.**

The intervenor manufacturer defendant companies, Danco and GenBioPro, assert "substantial financial interest[s]" in continuing to sell mifepristone. *La. v. FDA*, at *8. But those "potential financial losses pale beside Louisiana's sovereign interest in its laws protecting the unborn and the public's interest in not exposing women to unsafe medical procedures." *Id*. at 20. Lost sales of an abortifacient drug, in a state where it is illegal, is not an irreparable injury sufficient to justify the judicial stay of a ruling that would uphold the State's law. *Danco*, at *8 (Alito, J., dissenting); *see United States v. United Liquors Corp.*, 1956 U.S. Lexis 1671, *4 (1956) (inability to continue unlawful price fixing was not irreparable harm). On the contrary, equity routinely requires wrongdoers to disgorge the profits gained from unlawful activity. *Danco*, at *8 (Alito, J., dissenting), citing *Liu v. SEC*, 591 U.S. 71, 79–80 (2020).

**C.** **There is no public interest in perpetuating an illegal practice and policy.**

The public interest would be best served by "reducing defendants' opportunity to commit crimes" (*Zedner v. United States*, 547 U.S. 489, 501 (2006))—not by enhancing that opportunity. Defendants violate federal and Louisiana law through their unlawful distribution of abortifacient drugs. Louisiana law criminalizes (subject to narrow exceptions) dispensing, distributing, prescribing, delivering, or selling abortion drugs to a pregnant woman. LA. STAT. ANN. §§ 40:1061(C); 14:87.9(A). Under federal law, as noted above, their use of the mail to distribute these drugs is illegal. "[N]either the FDA nor the public has any interest in enforcing a regulation that violates federal law." *All.*, 78 F.4th at 251, *rev'd on other grounds*, 602 U.S. 367 (citing *Louisiana v. Biden*, 55 F.4th at 1035). *La. v. FDA*, at \*19. Nor is the public interest served "by perpetuating a medical practice whose safety the agency admits was inadequately studied. Indeed, the public interest demands the opposite." *Ibid*. "The public interest is served when administrative agencies comply with their obligations under the APA." *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009). The FDA has not complied with its obligations with respect to abortifacient drugs.

15

**D.** **The FDA can—and indeed should—review relevant data about the dangers of abortion-producing drugs.**

The public does have an interest in the proper functioning of the FDA, as a component of the Executive Branch, in accordance with congressional authorization and protocol. As the Fifth Circuit observed, "[g]ranting a stay would do nothing to prevent FDA from completing its review of mifepristone's safety protocols." *La. v. FDA*, at *21. That review is critically needed because "the guardrails have been progressively lowered" (*id*. at *6) and—as this case amply illustrates—there are serious dangers to the lives of both unborn children and their mothers.

Importantly, the FDA cannot authorize conduct that violates federal law. The "public interest is in having governmental agencies abide by the federal laws that govern their existence and operations." *Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (quotation omitted). Under the Administrative Procedure Act, courts must set aside agency action that is "not in accordance with law." 5 U.S.C. § 706(2)(A). That includes "*any law*, and not merely those the agency is charged with administering." *FCC v. Next Wave Pers. Commc'ns, Inc.*, 537 U.S. 293, 300 (2003). The FDA must reject an application or modification for a drug that lacks adequate safety information. *See* 21 U.S.C. § 355(d) (initial approval); 21 C.F.R. § 314.71 (modification).

Changes in the REMS have included dropping the requirement to report non-fatal adverse events (as of 2016), but then citing the lack of data (around 2021) to

16

justify the conclusion that the drug is safe. *All. for Hippocratic Med. v. United States Food & Drug Admin*., 2023 U.S. App. Lexis 8898, *47 (5th Cir. 2023). "This ostrich's-head-in-the-sand approach is deeply troubling—especially on a record that, according to applicants' own documents, necessitates a REMS program, a 'Patient Agreement Form,' and a 'Black Box" warning.'" *Ibid*. Clearly an open, honest view is desperately needed without further delay.

## CONCLUSION

This Court should expedite the appeal, reverse the District Court ruling, and grant the relief requested by Plaintiffs with respect to the 2023 REMS.

DATED:  June 16, 2026

/s/Deborah J. Dewart
Deborah J. Dewart, Attorney at Law
111 Magnolia Lane
Hubert, NC  28539
lawyerdeborah@outlook.com
(910) 326-4554 (phone)

Counsel for *Amici Curiae*
*NC Values Institute*
*World Faith Foundation*

17

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2026, an electronic copy of the foregoing brief was filed with the Clerk of this Court using the CM/ECF system, which will serve all counsel of record.

/s/Deborah J. Dewart
Deborah J. Dewart

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,897 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman 14-point font in text and Times New Roman 14-point font in footnotes produced by Microsoft Word software.

/s/Deborah J. Dewart
Deborah J. Dewart

**ECF CERTIFICATIONS**

I certify that the required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13, the electronic submission is an exact copy of the paper submission, and the document has been scanned for viruses and is free of viruses.

/s/Deborah J. Dewart
Deborah J. Dewart