**No. 26-30203**

# In the United States Court of Appeals for the Fifth Circuit

———

**STATE OF LOUISIANA, ET AL.**,
*Plaintiffs-Appellants,*

*v.*

**FOOD & DRUG ADMINISTRATION, ET AL.**,
*Defendants-Appellees.*

———

On Appeal from the United States District Court
for the Western District of Louisiana

———

**BRIEF OF AMICUS CURIAE NEBRASKA AND TWENTY OTHER STATES IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL**

———

MICHAEL T. HILGERS
Attorney General of Nebraska

Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
(402) 4712683
cody.barnett@nebraska.gov

CODY S. BARNETT
Solicitor General
*Counsel of Record*

Counsel for Amici State of
Nebraska

## CERTIFICATE OF INTERESTED PERSONS

Amici States are governmental parties. Under Fifth Circuit Rule 28.2.1, a certificate of interested persons is not required.

i

## TABLE OF CONTENTS

Page

Introduction & Interest of Amici Curiae ................................................... 1

Argument.................................................................................................. 6

    Louisiana has standing to challenge the 2023 REMS........................ 6

        A.  The 2023 REMS harms Louisiana's sovereign
            interest in enforcing its own laws. ........................................ 8

        B.  The 2023 REMS imposes a pocketbook injury on
            States. .................................................................................. 17

Conclusion .............................................................................................. 23

Certificate of Compliance ...................................................................... 26

Certificate of Service ............................................................................. 27

ii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alden v. Maine,*
   527 U.S. 706 (1999).................................................................................7

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
   458 U.S. 592 (1982)......................................................................... 11, 12

*All. for Hippocratic Med. v. FDA,*
   2023 WL 2913725 (5th Cir. Apr. 12, 2023) ........................................18

*Biden v. Nebraska,*
   600 U.S. 477 (2023)..............................................................................7, 17

*Bond v. United States,*
   564 U.S. 211 (2011) ...............................................................................10

*Bost v. Ill. State Bd. of Elecs.,*
   607 U.S. 71 (2026)........................................................... 6, 13, 17, 19

*Brown v. Fletcher's Estate,*
   210 U.S. 82 (1908)....................................................................................9

*Cal. Ass'n of Private Postsecondary Schs. v. DeVos,*
   344 F. Supp. 3d 158 (D.D.C. 2018) ......................................................14

*Cameron v. EMW Women's Surgical Ctr., PSC,*
   595 U.S. 267 (2022)..................................................................................8

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)................................................................................12

*Diamond Alternative Energy, LLC v. EPA,*
   606 U.S. 100 (2025).......................................................... 15, 19, 21, 22

*Dobbs v. Jackson Women's Health Org.,*
   597 U.S. 215 (2022)........................................................... 1, 8, 9, 15

## Cases—continued

*Florida v. FDA,*
 Case No. 7:25-cv-0126 (N.D. Tex.).......................................................4

*GenBioPro, Inc. v. Raynes,*
 144 F.4th 258 (4th Cir. 2025) ...........................................................8

*Gregory v. Ashcroft,*
 501 U.S. 452 (1991)........................................................................10

*Hughes v. Fetter,*
 341 U.S. 609 (1951)........................................................................10

*Louisiana ex rel. Murrill v. FDA,*
 175 F.4th 310 (5th Cir. 2026) ....................................................*passim*

*Massachusetts v. EPA,*
 549 U.S. 497 (2007)..........................................................................7

*Medtronic, Inc. v. Lohr,*
 518 U.S. 470 (1996)..........................................................................9

*Metropolitan Life Ins. Co. v. Massachusetts,*
 471 U.S. 724 (1985)..........................................................................8

*Missouri v. FDA,*
 Case No. 4:25-cv-01580 (E.D. Mo.) .....................................................4

*Monsanto Co. v. Geertson Seed Farm,*
 561 U.S. 139 (2010)........................................................................20

*Nat'l Pork Prods. Council v. Ross,*
 598 U.S. 356 (2023)......................................................................9, 11

*New York v. New Jersey,*
 598 U.S. 218 (2023)..........................................................................9

*Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.,*
 766 F.2d 228 (6th Cir. 1985)..............................................................8

## Cases—continued

*Rhode Island v. Massachusetts,*
37 U.S. (12 Pet.) 657 (1838) ......................................................11

*Tennessee v. U.S. Dep't of Educ.,*
615 F. Supp. 3d 807 (E.D. Tenn. 2022) ...............................12

*Texas v. United States,*
787 F.3d 733 (5th Cir. 2015) .......................................................8

*Toomer v. Witsell,*
334 U.S. 385 (1948) .....................................................................10

*Trump v. CASA, Inc.,*
606 U.S. 861 (2025) .....................................................................14

*United States v. Texas,*
599 U.S. 670 (2023) .....................................................................15

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) .......................................................................9

## Constitution

U.S. Const. art. IV, § 1 ...............................................................10

U.S. Const. art. IV, § 2 ...............................................................10

## Statutes

Ala. Code § 26-23E-7 .....................................................................2

Ala. Code § 26-23H-4 .....................................................................1

Ark. Code Ann. § 5-61-304 ...........................................................1

Ark. Code Ann. § 20-16-1504 .......................................................2

Ga. Code Ann. § 16-12-141............................................................1

Ga. Code Ann. § 16-12-140............................................................2

Idaho Code Ann. § 18-607 ...................................................................2

Idaho Code Ann. § 18-608 ...................................................................1

Idaho Code Ann. § 18-617 ...................................................................2

Idaho Code Ann. § 18-622 ...................................................................1

Ind. Code § 16-18-2-1...........................................................................2

Ind. Code § 16-34-2-1...........................................................................1

Iowa Code § 146C.2 .............................................................................1

Iowa Code § 146E.2 .............................................................................1

Ky. Rev. Stat. § 311.772 ......................................................................1

Ky. Rev. Stat. §§ 311.7731–.7739........................................................2

La. R.S. 40:1061.11...............................................................................6

Miss. Code Ann. § 41-41-34.1 ..............................................................1

Miss. Code Ann. § 41-41-45..................................................................1

2026 Miss. Laws, H.B. 1613 (Mar. 31, 2026) .......................................2

Mo. Rev. Stat. § 188.021.......................................................................2

Mo. Rev. Stat. § 188.056.......................................................................1

Mo. Rev. Stat. § 188.057.......................................................................1

Mo. Rev. Stat. § 188.058.......................................................................1

Mont. Code Ann. § 50-20-109...............................................................1

Mont. Code Ann. § 50-20-704 ..............................................................2

Neb. Rev. Stat. § 28-3,106............................................................... 1, 16

Neb. Rev. Stat. § 28-325 .....................................................................16

Neb. Rev. Stat. § 28-335 .............................................................. 1, 16

Neb. Rev. Stat. § 71-6915(2) ............................................................. 1

Neb. Rev. Stat. § 28-335 .............................................................. 7, 15

N.D. Cent. Code Ann. § 12.1-19.1-02 ................................................ 1

N.D. Cent. Code Ann. §§ 14-02.1-03.5 ................................................ 2

Okla. Stat. Title 63, § 1-731.4 ......................................................... 1

Okla. Stat. Title 21, § 861 ............................................................... 2

S.C. Code Ann. § 44-41-650 ............................................................. 1

S.D. Codified Laws § 22-17-5.1 ........................................................ 1

2026 S.D. Sess. Laws, H.B. 1274 (Mar. 30, 2026) .................................. 2

Tex. Health & Safety Code § 170A.002 ............................................... 1

Tex. Health & Safety Code § 171.063 ................................................. 2

Tex. Health & Safety Code § 171A.051 ............................................... 2

Utah Code Ann. § 76-7-302 ............................................................. 1

Utah Code Ann. § 76-7-332 ............................................................. 2

Utah Code Ann. § 76-7a-201 ........................................................... 1

W. Va. Code § 16-2R-3 ...........................................................................1

W. Va. Code § 30-1-26 ...........................................................................2

Wyo. Stat. Ann. §§ 33-1-401–403 ..........................................................2

Wyo. Stat. Ann. §§ 35-6-301–302 ..........................................................2

Wyo. Stat. Ann. §§ 35-6-401–404 ..........................................................1

**Other Authorities**

Executive Order 14076, *Protecting Access to Reproductive Healthcare Services*, 87 Fed. Reg. 42053 (July 8, 2022) ......................2

Family Planning, *#WeCount* ..................................................................3

Gillian E. Metzger, *Congress, Article IV, and Interstate Relations*, 120 Harv. L. Rev. 1468, 1520 (2007) .............................. 10

John Locke, *The Second Treatise of Government*, Chapter 9 ................. 13

Letter from 17 Attorneys General to the Senate Committee on Health, Education, Labor and Pensions (Jan. 13, 2026), https://perma.cc/RY5H-B53G ...........................................................3

President Biden to Sign Executive Order Protecting Access to Reproductive Health Care Services (July 8, 2022), https://perma.cc/9VML-4YCA............................................................2

Rachel Bluth, *Louisiana Wants a California Doctor Extradited to* ..................................................................................... 6

Rachel Bluth, *Louisiana Wants a California Doctor Extradited to Face Abortion Charges. Newsom Isn't Having It.*, Politico (Jan. 14, 2026), https://perma.cc/3Y8M-Z4G5............................................................ 6

Society of Family Planning, *#WeCount Report, April 2022 to June 2025* (Dec. 9, 2025), https://perma.cc/Z765-EUXB............... 3, 16

## **INTRODUCTION & INTEREST OF AMICI CURIAE**[1]

States have always had a "legitimate interest[]" in protecting unborn life. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 301 (2022). For nearly fifty years, however, they were stymied in how they could pursue that interest. That changed in 2022, when the Supreme Court "return[ed] the issue of abortion to the people's elected representatives." *Id.* at 232. After *Dobbs*, States can now enact and enforce laws that regulate or restrict the availability of abortion "based on their belief that abortion destroys an 'unborn human being.'" *Id.* at 256.

Amici States Nebraska, Alabama, Alaska, Arkansas, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Mississippi, Missouri, Montana, North Dakota, Oklahoma, South Carolina, South Dakota, Texas, Utah, West Virginia, and Wyoming have adopted such laws[2]—including

---

[1] Amici States file this brief under Fed. R. App. P. 29(a)(2), which gives States the right to "file an amicus brief without the consent of the parties or leave of court."

[2] *E.g.*, Neb. Rev. Stat. §§ 71-6915(2), 28-3,106; Ala. Code § 26-23H-4; Ark. Code Ann. § 5-61-304; Ga. Code Ann. § 16-12-141; Idaho Code Ann. §§ 18-608, 622; Ind. Code § 16-34-2-1; Iowa Code §§ 146C.2, 146E.2; Ky. Rev. Stat. § 311.772; Miss. Code Ann. §§ 41-41-34.1, 41-41-45; Mo. Rev. Stat. §§ 188.056–.058; Mont. Code Ann. § 50-20-109; N.D. Cent. Code Ann. § 12.1-19.1-02; Okla. Stat. tit. 63, § 1-731.4; S.C. Code Ann. § 44-41-630; S.D. Codified Laws § 22-17-5.1; Tex. Health & Safety Code § 170A.002; Utah Code Ann. §§ 76-7a-201, 76-7-302; W. Va. Code § 16-2R-3; Wyo. Stat. Ann. §§ 35-6-401–404.

laws that regulate chemical abortion.[3] These laws represent the considered judgments of "the people and their elected representatives" after hard-fought democratic deliberation. *Dobbs*, 597 U.S. at 259.

Rather than respect these States' sovereign prerogatives to protect prenatal life, the federal government has often undermined them. Most notably, in the immediate wake of this Court's decision in *Dobbs*, President Biden avowed that chemical abortion drugs would remain "as widely accessible as possible."[4] His pledge emphasized efforts to both maintain and expand access to mifepristone, including via telehealth prescription, which in turn facilitates the shipment of chemical abortion drugs across state lines—from pro-abortion States into those where abortion is more tightly regulated.[5]

---

[3] *E.g.*, Neb. Rev. Stat. § 28-335; Ala. Code § 26-23E-7; Ark. Code Ann. § 20-16-1504; Ga. Code Ann. § 16-12-140; Idaho Code Ann. §§ 18-607, 617(2); Ind. Code §§ 16-18-2-1, 16-34-2-1(a)(1); Ky. Rev. Stat. §§ 311.7731–.7739; 2026 Miss. Laws, H.B. 1613 (Mar. 31, 2026); Mo. Rev. Stat. § 188.021(1); Mont. Code Ann. § 50-20-704; N.D. Cent. Code Ann. §§ 14-02.1-03.5; Okla. Stat. tit. 21, § 861; 2026 S.D. Sess. Laws, H.B. 1274 (Mar. 30, 2026); Tex. Health & Safety Code §§ 171.063, 171A.051; Utah Code Ann. § 76-7-332; W. Va. Code § 30-1-26(b)(9); Wyo. Stat. Ann. §§ 33-1-401–403, 35-6-301–302.

[4] *See* Fact Sheet: President Biden to Sign Executive Order Protecting Access to Reproductive Health Care Services (July 8, 2022), https://perma.cc/9VML-4YCA.

[5] *Id*; *see also* Executive Order 14076, *Protecting Access to Reproductive Healthcare Services*, 87 Fed. Reg. 42053 (July 8, 2022).

Following up on that presidential proclamation, in 2023 the Food and Drug Administration (FDA) promulgated a Risk Evaluation and Mitigation Strategy (REMS) to govern mifepristone that removed the long-standing requirement that mifepristone be dispensed in-person and allowed the drug to be prescribed via telehealth. Even though States—like Nebraska—require a prescribing doctor to be physically present, the 2023 REMS permits doctors in California and New York (and any other pro-abortion jurisdiction) to prescribe mifepristone to out-of-state patients via telehealth. Thus, the 2023 REMS allows out-of-state doctors to prescribe mifepristone and arrange for its shipment to other jurisdictions without regard for the requirements of those States' laws and largely free from consequence.[6]

Seeking to protect its sovereign prerogatives and mitigate direct pocketbook harms, Louisiana brought an APA challenge to the 2023 REMS. The district court below "agreed that Louisiana was likely to win

---

[6] *See* Society of Family Planning, *#WeCount Report, April 2022 to June 2025* (Dec. 9, 2025), https://perma.cc/Z765-EUXB (noting that telehealth abortions have "continued to increase" and that "[s]hield laws continue to facilitate abortion access"); Letter from 17 Attorneys General to the Senate Committee on Health, Education, Labor and Pensions (Jan. 13, 2026), https://perma.cc/RY5H-B53G (describing how shield-state residents are "mailing abortion drugs" to women in States where abortion is tightly regulated and usually illegal).

its challenge … and was suffering irreparable harm from [the 2023 REMS]." *Louisiana ex rel. Murrill v. FDA*, 175 F.4th 310, 315 (5th Cir. 2026). Nevertheless, the district court "declined to stay" the 2023 REMS "based on its balancing of the equities and the public interest." *Id.* Louisiana then sought a stay from this Court.

This Court granted Louisiana's request. It agreed with the district court that Louisiana was likely to succeed on the merits and was facing the prospect of irreparable harm. *Id.* at 320–322. But it came to a different conclusion regarding the other stay factors. This Court found that Louisiana's "sovereign interest in its laws protecting the unborn and the public's interest in not exposing women to unsafe medical procedures" outweighed GenBioPro's countervailing interests. *Id.* at 322. That determination, along with Louisiana's likely success and the prospect of irreparable harm, led this Court to stay the 2023 REMS while proceedings continue. Danco and GenBioPro subsequently sought and obtained a stay from the Supreme Court.

As this Court now considers the merits of Louisiana's claim, Amici States urge the Court to adhere to its earlier ruling and issue a stay under 5 U.S.C. § 705. Like Louisiana, the Amici States are suffering ongoing

4

harms directly traceable to the proliferation of chemical abortion drugs made possible by the 2023 REMS.[7] These harms—both sovereign and pecuniary—are irreparable. *Id.* A Section 705 stay will ameliorate these harms while still allowing FDA to conduct its ongoing review of mifepristone's overall safety and efficacy. And despite overwrought contentions that such preliminary relief would "unleash[] regulatory chaos" and "abruptly cut[] off access for patients nationwide," Emergency Appl. to Vacate Stay Pending Appeal and For An Administrative Stay at 3, *GenBioPro, Inc. v. Louisiana*, No. 25A1208 (2026), the reality is more modest. As this Court has already explained, a stay only "pause[s] a method of prescribing mifepristone that began five years ago and was formally approved only three years ago." *Louisiana ex rel. Murrill*, 175 F.4th at 322. Mifepristone can still be legally prescribed, sold, and distributed under the prior REMS regime.

Practically, a Section 705 stay would preserve Louisiana's and the Amici States' sovereign prerogative to regulate abortion within their own borders as their citizens see fit. To be sure, a Section 705 stay will

---

[7] *See also, e.g., Missouri v. FDA*, Case No. 4:25-cv-01580 (E.D. Mo.); *Florida v. FDA*, Case No. 7:25-cv-0126 (N.D. Tex.).

undermine efforts, emanating from pro-abortion jurisdictions, to flout the Amici States' duly enacted abortion regulations and restrictions. That is a feature, not a bug. As this Court has explained, there is no legitimate interest in "continuing unlawful agency action." *Id.* at 316. Even FDA concedes that the 2023 REMS was likely unlawful. *Id.*; *see also id.* at 323. This Court should reverse the district court and remand with instructions to issue a Section 705 stay.

## ARGUMENT

**Louisiana has standing to challenge the 2023 REMS.**

To have standing, Louisiana must "be able to answer a basic question: 'What's it to you?'" *Bost v. Ill. State Bd. of Elecs.*, 607 U.S. 71, 76 (2026) (quoting A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). Louisiana has "an obvious answer." *Id.* Through the democratic process, the people of Louisiana enacted a limitation on chemical abortions: the provider prescribing "the drug or chemical shall be in the same room and in the physical presence of the pregnant woman when the drug or chemical is initially administered, dispensed, or otherwise provided to the pregnant woman." La. R.S. 40:1061.11. Yet the 2023 REMS directly

undermines this validly enacted law. The 2023 REMS permits out-of-state doctors to do exactly what state law forbids. And as Louisiana has experienced, bringing those doctors who openly defy Louisiana law to justice has not been easy.[8]

Moreover, the 2023 REMS attempts to enshrine the policy preferences of some States over and against those of other States. California and New York do not get to set national abortion policy. Yet that's exactly what the 2023 REMS accomplishes. That's a direct affront to the sovereignty of prolife States, such as Louisiana and Amici States, that have charted a different path.

Not only that, but because of the 2023 REMS, Louisiana will suffer economic harms through increased Medicaid costs. Both harms, sovereign and financial, give Louisiana standing. *See Massachusetts v. EPA*, 549 U.S. 497, 518–20 (2007) (States' sovereign prerogatives warrant "special solicitude" in standing analysis); *Biden v. Nebraska*, 600 U.S. 477,

---

[8] Attempts to hold accountable California doctors who have facilitated the shipment of abortion-inducing drugs to Louisiana residents have been unsuccessful. See, *e.g.*, Rachel Bluth, *Louisiana Wants a California Doctor Extradited to Face Abortion Charges. Newsom Isn't Having It.*, Politico (Jan. 14, 2026), https://perma.cc/3Y8M-Z4G5.

489 (2023) (State has Article III injury where it has "suffered an injury in fact … to a legally protected interest, like property or money").

### A.    The 2023 REMS harms Louisiana's sovereign interest in enforcing its own laws.

Our federalist system "preserves the sovereign status of the States," *Alden v. Maine*, 527 U.S. 706, 714 (1999), and reserves to each State "numerous and indefinite" powers within its jurisdiction, The Federalist No. 45. At a minimum, that power includes the ability "to create and enforce a legal code." *Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601–02 (1982)). "*Paramount* among the States' retained sovereign powers is the power to enact and enforce any laws that do not conflict with federal law."[9] *Cameron v. EMW Women's Surgical Ctr., PSC*, 595 U.S. 267, 277 (2022) (emphasis added). Our federalist system

---

[9] The Biden Administration argued that the 2023 REMS preempted prolife States' laws. That's not only wrong, *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 267 (4th Cir. 2025) (holding that the Food and Drug Administration Amendments "fall[] well short of expressing a clear intention to displace the states' historic and sovereign right to protect the health and safety of their citizens"), but it also underscores why Louisiana has standing, *Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 232–33 (6th Cir. 1985).

demands "respect" for "the place of States" in exercising their "residuary and inviolable sovereignty." *Id.*

The 2023 REMS pays this system no heed. *First*, the 2023 REMS imposes a national scheme on a state issue. *Dobbs*, 597 U.S. at 301. The Constitution establishes a limited federal government confined to enumerated powers. It leaves to the States "great latitude" to protect "the lives, limb, health, comfort, and quiet of all persons." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) (cleaned up). "[P]rotect[ing] the people" within a State's borders is a "fundamental aspect of a State's sovereign power." *New York v. New Jersey*, 598 U.S. 218, 225 (2023); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).

Abortion is no exception. *Dobbs*, 597 U.S. at 301. The Supreme Court unequivocally held that "the authority to regulate abortion must be returned to the people and their elected representatives." *Id.* at 292. Yet the 2023 REMS attempts to usurp the States' prerogatives on chemical abortion and federalize it.

*Second*, the 2023 REMS frustrates horizontal federalism. By necessity, "[t]he sovereignty of each State … implie[s] a limitation on the sovereignty of all of its sister States." *World-Wide Volkswagen Corp. v.*

9

*Woodson*, 444 U.S. 286, 293 (1980). "The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others." *Brown v. Fletcher's Estate*, 210 U.S. 82, 89 (1908). After all, the Founders experienced how unfettered state sovereignty could "cut[] off the lifeblood of the Nation" and accordingly "discarded the Articles of Confederation and adopted a new Constitution." *Nat'l Pork Prods. Council v. Ross*, 598 U.S. 356, 404 (2023) (Kavanaugh, J., concurring and dissenting in part). Under this new Constitution, each State was afforded wide latitude to operate within *its* borders, resulting in "innovation and experimentation in government," "increase[d] opportunity for citizen involvement in democratic processes," and governments more attuned to the "diverse needs of a heterogenous society." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991).

The Constitution repeatedly references the respect States owe to sister States. For example, the Full Faith and Credit Clause imposes a "constitutional obligation to enforce the rights and duties validly created under the laws of other states." *Hughes v. Fetter*, 341 U.S. 609, 611 (1951); U.S. Const. art. IV, § 1. And the Privileges and Immunities Clause similarly bars "discrimination against citizens of other States

10

where there is no substantial reason for the discrimination beyond the fact that they are citizens of other States." *Toomer v. Witsell*, 334 U.S. 385, 296 (1948); U.S. Const. art. IV, § 2. In short, "[t]he principle that states are territorially bound … permeates the Constitution." Gillian E. Metzger, *Congress, Article IV, and Interstate Relations*, 120 Harv. L. Rev. 1468, 1520 (2007).

The genius of our system of federalism is that it allows for differing views and approaches on important policy questions. *See Bond v. United States*, 564 U.S. 211, 221–22 (2011). What it does *not* allow is for a select few States—no matter how populous or economically and politically significant—to impose their policy preferences on others. *See Nat'l Pork Prods. Council*, 598 U.S. at 406–07 (2023) (Kavanaugh, J. concurring and dissenting in part) (one State's attempt to "unilaterally impose its moral and policy preferences … on the rest of the Nation … undermines federalism and the authority" of other States). In our constitutional system, no State can "have any right beyond its territorial boundary." *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 733 (1838). So California and New York have no license to establish abortion policy for Amici States.

11

But the 2023 REMS effectively permits New York and California doctors to superimpose their views on States like Louisiana, whose citizenry and electorate have charted a different path. Under the 2023 REMS, a New York doctor can circumvent prolife States' clear prohibitions on telehealth chemical abortions. That is a direct affront to States' "sovereign interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). A federal regulation on a quintessential state issue should not enable California's policy choices to extend beyond her borders and override Louisiana's contrary choices.

Prolife States are harmed as a result. To have standing, a litigant must show a "concrete, particularized, and actual or imminent" harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). And "courts have recognized that States suffer a cognizable injury for purposes of constitutional standing when they allege an intrusion on their ability to enforce their own legal code, whether by way of direct interference or interference analogous to substantial pressure to change state laws." *Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 821 & n.7 (E.D. Tenn. 2022) (collecting cases). Because the 2023 REMS permits chemical abortifacients to be prescribed remotely across state borders, a

12

New York doctor can circumvent a Louisiana enactment which outlaws precisely that behavior. Indeed, the 2023 REMS permits a New York doctor to prescribe, via a telehealth appointment, a chemical abortifacient to a Louisiana resident who is *located in Louisiana at the time of the prescription*. That fires a shot across Louisiana's virtual—and actual—border, with a gun provided by the 2023 REMS.

This interference with Louisiana's ability to vindicate its public policy choices *within its own territory* is a direct affront to its "sovereign interest." *Snapp & Son*, 458 U.S. at 601. And the 2023 REMS is a but-for cause of the resulting harm—which extends to Louisiana all it needs to satisfy the standing inquiry.

Put differently, standing separates those with a "personal stake" in a dispute from "mere bystander[s]." *Bost*, 607 U.S. at 78. Like candidates vis-à-vis elections, States have an "obvious" interest in their legal codes' viability. *Id.* Candidates "spend untold time and resources seeking to claim the right to voice the will of the people," making their interest in fair and accurate elections "in no sense common to all members of the public." *Id.* (cleaned up). States also "spend untold time and resources"

13

passing and enforcing their own laws, which is "in no sense common to all members of the public."

As sovereigns, States "do not bear the sword for no reason," *see Romans* 13:4—they have been entrusted with authority to "regulate[] by laws" and "the power to punish the crimes committed against that law," John Locke, *The Second Treatise of Government*, Chapter 9. If a candidate is not a "mere bystander" to her own election, then neither is a State a "bystander" when it comes to the enforcement of its own laws. *Bost*, 607 U.S. at 78–79 (citing *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025)). Even proabortion States appear to recognize the sovereign interests at stake here, arguing to the Supreme Court that preliminary relief would "elevate[] the policy preferences of [prolife] States … over the preferences of other States that have made the different but *equally sovereign* determinations to promote" abortion. Br. for New York et al. as Amici Curiae in Support of Applicants for a Stay at 16, *GenBioPro, Inc. v. Louisiana*, No. 25A1208 (2026).

Consider Louisiana's harm in a different context—proving irreparable harm for equitable relief. There, whenever "a State" is prevented from "effectuating statutes enacted by representatives of its people, it

14

suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 861 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). The standard to demonstrate irreparable harm is "more demanding" than the one to establish a concrete injury. *See Cal. Ass'n of Private Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018). So if a State suffers irreparable harm when it cannot effectuate its duly enacted statutes, it necessarily suffers concrete harm for purposes of Article III standing, too.

That Louisiana has standing to vindicate its sovereign interest in enforcing its own laws would not, as the FDA has postulated, "expand state standing to challenge any federal action that allegedly increases crime or disorder." R. 51, at 15. (quoting *Washington v. FDA*, 108 F.4th 1163, 1177 (9th Cir. 2024)). That ignores the harm alleged here and the context in which the 2023 REMS came to be. The 2023 REMS did not *incidentally* increase telehealth abortions. *Contra United States v. Texas*, 599 U.S. 670, 680 & n.3 (2023) (disclaiming standing when a State alleges harm from the "indirect effects" of a federal policy). Abetting illegal abortions was the very point. Mifepristone has one primary purpose: to induce an abortion chemically rather than surgically. The Biden Administration

15

did not even attempt to hide the ball. It made clear that the "entire purpose" behind its actions was to make mifepristone available via telehealth, *regardless* of contrary state laws. *See Diamond Alternative Energy*, 606 U.S. at 112. When the federal government takes regulatory action that directly targets a State's validly enacted laws, that implicates the State's sovereign interest in its own legal code.

Like Louisiana, Amici States have a clear sovereign interest in protecting prenatal life. *Dobbs*, 597 U.S. at 301. For instance, Nebraska's Legislature long ago enacted a statute declaring "an expression of the will of the people of the State of Nebraska and the members of the Legislature to provide protection for the life of the unborn child whenever possible." Neb. Rev. Stat. § 28-325. Under that statutory principle, Nebraska has prohibited abortions after twenty weeks' gestation, *id.* § 28-3,106, and altogether banned chemical abortions "unless the physician who uses or prescribes" abortion pills "is physically present in the same room with the patient when the physician performs, induces, or attempts to perform or induce the abortion," *id.* § 28-335.

Also like Louisiana, Amici States have experienced sovereign harms as a result of the 2023 REMS. In Nebraska, for instance,

16

telehealth abortions have steadily increased since 2023—despite a clear prohibition on the practice. Society of Family Planning, *#WeCount Report, April 2022 to June 2025* (Dec. 9, 2025), https://perma.cc/Z765-EUXB. Other Amici States with similar bans have also experienced a drastic rise in telehealth abortions. *Id.* The 2023 REMS is the only explanation for the rise in these numbers when the State otherwise prohibits the practice altogether.

The data confirms that the 2023 REMS does an end-run around Amici States' validly enacted laws. That is a direct affront to the States' sovereignty. Such a harm is sufficiently concrete to give Louisiana standing to challenge the 2023 REMS's intrusion on our federalist system.

## B.    The 2023 REMS imposes a pocketbook injury on States.

The 2023 REMS imposes not only a sovereign injury on States, but it also imposes an economic one. "Pocketbook harm is a traditional Article III injury." *Bost*, 607 U.S. at 83 (Barrett, J., concurring in the judgment); *see also, e.g., Biden v. Nebraska,* 600 U.S. at 489–90. "That is so not only when a law directly imposes costs on a plaintiff, … but also when a plaintiff reasonably incurs costs to mitigate or avoid the substantial risk of a harm caused by a [law]." *Id.* (cleaned up).

17

Without the federal government's imprimatur, Louisiana's emergency rooms would only rarely be confronted with mifepristone complications arising from patient self-administration gone awry—because access to mifepristone would be subject to in-person physician oversight and administration, which would reduce the risks of dangerous complications, including by ensuring that women are not being administered the drug after ten weeks' gestation or if they have an ectopic pregnancy.[10] There also would be fewer complications because there would be fewer mifepristone abortions. But so long as the 2023 REMS governs, telehealth-prescribed mifepristone has (and will continue) to flow regularly into Louisiana. Indeed, facilitating that flow is an undeniable purpose of the 2023 REMS: It empowers out-of-state doctors to remotely prescribe mifepristone to Louisiana residents *while they are in Louisiana* and without regard for *Louisiana* law. And when a Louisiana recipient of such a prescription suffers a complication in Louisiana, the Louisiana medical system must treat it. Furthermore, when that Louisiana patient is enrolled

---

[10] *See* FDA, *Questions and Answers on Mifepristone for Medical Termination of Pregnancy Through Ten Weeks Gestation*, https://tinyurl.com/4yjz9cvx.

in Medicaid (as many thousands of Louisianans are), Louisiana must pay (at least in part) for the ensuing treatment.

It's "statistically certain" that expenditures of this sort will happen. *All. for Hippocratic Med. v. FDA*, 2023 WL 2913725, at *10 (5th Cir. Apr. 12, 2023). Which is exactly why this Court already concluded that Louisiana has suffered a "financial injury" sufficient to establish standing. *Louisiana ex rel. Murrill*, 175 F.4th at 319–20 ("A State's 'expenditures in providing emergency medical services' constitute an injury for standing purposes.") (quoting *Texas v. United States*, 50 F.4th 498, 518 (5th Cir. 2022)). As this Court noted, Louisiana specifically identified thousands of dollars in Medicare costs arising from "complications caused by out-of-state mifepristone." *Id.* at 320. And "[s]uch costs will almost certainly continue because nearly 1,000 women monthly—many of whom are on Medicaid—have mifepristone-induced abortions in Louisiana." *Id.*

The FDA contended below that the 2023 REMS does not "require Louisiana to do anything or refrain from doing anything," so it can't suffer an economic harm. R. 51, at 14 (cleaned up) (quoting *FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 385 (2023)). Not true. As a result of the illegal abortion drugs flowing into its borders, Louisiana has

19

experienced "actual emergency-room visits by patients who took mifepristone received by mail and whose care costs will likely ultimately fall to Medicaid and the State." R. 42.

FDA cannot dodge these harms by contending that "Louisiana does not prescribe or use mifepristone." R. 51, at 14 (cleaned up) (quoting *All. for Hippocratic Med.*, 602 U.S. at 385). Again, that treats Louisiana as a "mere bystander" to the erosion of its own laws when it clearly is not. *Bost*, 607 U.S. at 78. Worse, it ignores that plaintiffs have standing when they suffer economic harm because of federal regulation—even if plaintiffs aren't the directly regulated parties. In *Diamond Alternative Energy*, fuel producers who were not directly regulated by a federal regulation could nevertheless challenge it because the California regulations enabled by the federal regulation would hurt the fuel producers' ability "to make money by selling fuel." 606 U.S. at 113–14. Similarly, alfalfa farmers could challenge a rule deregulating genetically modified alfalfa when they undertook costly preventative measures to "minimize the likelihood of potential contamination." *Monsanto Co. v. Geertson Seed Farm*, 561 U.S. 139, 154–55 (2010).

Louisiana has similar economic interests at stake here. The State will have to pick up the tab when its women are harmed from a drug that the State considers too dangerous to prescribe via telehealth that is nevertheless being prescribed under the REMS without an in-person visit, much less a physical examination and physician oversight. FDA cannot deny that is an economic harm.

Instead, FDA below (and Danco and GenBioPro in their applications to the Supreme Court) try to stretch the chain of causation to suggest that such harms are attenuated. But there's nothing attenuated about what will occur here. President Biden himself said that state laws prohibiting telehealth abortions would "be felt most acutely by underserved communities"—the very individuals who likely receive Medicaid benefits. FDA cannot now turn around and treat this first link as unlikely.

Nor can FDA disclaim the statistical certainty that a percentage of this population will experience complications requiring medical treatment when its own labels admit as much. *Id.* The relationship between the 2023 REMS and Louisiana's expenditures is first-order—so long as the 2023 REMS is operative, Louisiana's Medicare expenditures *will predictably*

21

*increase. See Louisiana ex rel. Murrill*, 175 F.4th at 320 (recognizing that between 2.9 and 4.6 percent of women prescribed mifepristone require emergency care and highlighting FDA's concession that "emergency room care is statistically certain in hundreds of thousands of cases") (quoting *Alliance for Hippocratic Med.*, 2023 WL 2913725, at *10). And the converse is equally true—if the 2023 REMS is set aside, Louisiana's Medicare outlays *will necessarily decrease* because *less* mifepristone will flow into Louisiana from out-of-state. *See id.* at 319 (recognizing that "a decision in Louisiana's favor would redress [the State's] injur[ies] because mifepristone could no longer be remotely prescribed to Louisianans").

And if this "commonsense economic[s]" isn't enough, *Diamond Alternative Energy*, 606 U.S. at 116, then the numbers themselves establish the harm: Louisiana has pled at least $92,000 in increased Medicaid costs from two mifepristone-induced abortions in 2025.

*     *     *

Through the 2023 REMS, the Biden Administration "target[ed]" prolife States whose citizenry reached a different conclusion on telehealth abortions. *Diamond Alternative Energy*, 606 U.S. at 125. The federal government cannot now "lock[]" these States "out of court as

22

unaffected bystanders." *Id.* The 2023 REMS was a direct attack on these States' duly enacted laws, striking at the very heart of state sovereignty. Not only that, but States have suffered pocketbook harms that they otherwise would not have borne. Louisiana has standing to challenge FDA's illegal actions.

## CONCLUSION

The Court should reverse and remand with instructions to issue a stay under 5 U.S.C. § 705.

Dated: June 22, 2026                    Respectfully submitted.

MICHAEL T. HILGERS                    CODY S. BARNETT
Attorney General of Nebraska          Solicitor General
                                      *Counsel of Record*

Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
(402) 471-2683                        /s/ Cody S. Barnett
cody.barnett@nebraska.gov             Counsel for the State of Nebraska

On behalf of:

Steve Marshall
Attorney General
State of Alabama

Cori Mills
Acting Attorney General
State of Alaska

Tim Griffin
Attorney General
State of Arkansas

Christopher M. Carr
Attorney General
State of Georgia

Raúl R. Labrador
Attorney General
State of Idaho

Theodore E. Rokita
Attorney General
State of Indiana

Brenna Bird
Attorney General
State of Iowa

Kris W. Kobach
Attorney General
State of Kansas

Russell Coleman
Attorney General
State of Kentucky

Lynn Fitch
Attorney General
State of Mississippi

Catherine L. Hanaway
Attorney General
State of Missouri

Austin Knudsen
Attorney General
State of Montana

Drew Wrigley
Attorney General
State of North Dakota

Gentner F. Drummond
Attorney General
State of Oklahoma

Alan Wilson
Attorney General
State of South Carolina

Marty J. Jackley
Attorney General
State of South Dakota

Ken Paxton
Attorney General
State of Texas

Derek Brown
Attorney General
State of Utah

John B. McCuskey
Attorney General
State of West Virginia

Keith G. Kautz
Attorney General
State of Wyoming

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitations of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 4,622 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used to calculate the word count).

/s/ Cody S. Barnett
Cody S. Barnett

## CERTIFICATE OF SERVICE

On June 22, 2026, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ Cody S. Barnett \
Cody S. Barnett